[Crim. No. 5113. Second Dist., Div. Two. Mar. 25, 1954.]

THE PEOPLE, Respondent, v. PAUL KRUEGER GLASCOCK, Appellant.

G. Vernon Brumbaugh for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

McCOMB, J.—After trial before the court without a jury, defendant was found guilty as charged in count I of the information of violating section 337a, subdivision 1, of the

Penal Code (bookmaking and pool selling). He was found not guilty as to count II of the same information which charged him with violating Penal Code, section 337a, subdivision 2. Defendant appeals from the judgment and also the order denying his motion for a new trial.

Viewing the evidence as we must in the light most favorable to the People (respondent) the record discloses that on March 31, 1953, Officers Jewell and Adcock parked their car on the south side of Pico Boulevard about a quarter of a block west of defendant's cleaning establishment located at 2817 West Pico, Los Angeles. They observed the premises for two and one-half hours. During this period approximately 20 persons entered defendant's establishment. A large number of them had nothing in their hands when they entered and nothing when they left.

Thereafter the officers entered the premises and searched them. On a table underneath a telephone, Officer Jewell observed many slips of paper, including a white piece of paper with numerals, symbols and lettering on it. Other pieces of paper were yellow with identification on the reverse side referring to Pride Cleaners at the above mentioned address. There was also found a copy of the Daily Mirror, dated March 31, 1953.

In the opinion of a handwriting expert the handwriting on the slips of paper was that of defendant. An officer who was qualified as an expert on bookmaking, book recording and pool selling in Los Angeles testified that bookmakers or pool sellers in the county commonly used telephones, radios, pieces of paper, slates and pencils; that the National Daily Reporter is normally used in bookmaking along with the sport section of daily newspapers; that bets are most commonly recorded by use of telephones or by use of papers. He further testified that in his opinion the white piece of paper found in defendant's establishment was what is known in bookmaking and pool selling vernacular as an "owe sheet," a document certifying or showing "that either the handbook owes to the bettor or the bettors owe to the handbook"; that the pieces of yellow paper were what is commonly known as betting markers; that on one of these betting markers there appeared on the first line the figure "5," then "B," then "Hash Pie" and the figure "2"; that the "5" meant the race, the "B" the track, "Hash Pie" was the name of a horse; that on the last line of this betting marker was the figure "7," then "G," then "Pale Pal," a dash, and "2-0-2."

According to the expert the "7" meant the race and the "G" the track, "2-0-2" meant two to win, nothing to place and two to show. Officer Adcock compared the words and figures on this betting marker with the printed material contained in the National Daily Reporter scratch sheet for that day and also the Daily Mirror newspaper. He found that "Hash Pie" was the name of a horse running at Bowie in the fifth race and that "Pale Pal" was the name of a horse running at Gulf Stream. He made similar comparisons with other portions of papers found at defendant's place of business and said they were names of horses running at various tracks throughout the country for that date.

On each of the betting markers there appeared a different name at the top. In the expert's opinion the name at the top indicated the name of the bettor for that particular horse on that date.

En route to the city jail, Officer Jewell had a conversation with defendant whose statements were freely and voluntarily made. The officer asked defendant whether he himself had bet on the races, and whether or not he did better than the people who laid bets with him. Defendant said that he did a lot better than they did; that they usually lost. He stated he would make about $80 to $90 a month betting. The officer then asked defendant how much money he made on every bet, that is what his percentage was, and defendant said he gained 7½ per cent on every dollar bet. Officer Jewell then inquired as to how much money defendant made on bookmaking to which he answered that it did not amount to very much because most of the bets were for just one or two dollars. Defendant did not testify at the trial.

*Questions:* First: *Was the evidence sufficient to establish the corpus delicti?*

*Yes.* The corpus delicti is established in a bookmaking case so as to render admissible evidence of defendant's extrajudicial statements where betting markers and owe sheets, some of the entries on which are shown to have been made by defendant, and to have been found in his establishment, are received in evidence. It is a fair inference from such evidence that bookmaking has been carried on there. (*People v. Cohen*, 107 Cal.App.2d (hearing denied by the Supreme Court) 334, 343 [10] [237 P.2d 301].)

In the instant case the foregoing evidence establishes all of the elements necessary to meet the requirements of the stated rule.

172

**■** Second: *Is there substantial evidence to sustain the judgment of conviction?*

*Yes.* The evidence set forth above which established the corpus delicti, taken in connection with defendant's extrajudicial statements which were freely and voluntarily made, fully sustains the judgment of guilty of the offense with which he was charged.

*People* v. *Coppla,* 100 Cal.App.2d 766 [224 P.2d 828], relied on by defendant, is not here applicable. The case is factually distinguishable from the present case, for in the cited case the defendant was a messenger boy carrying envelopes, the contents of which were unknown to him. Clearly this is not the situation in the case at bar.

Third: *Since defendant was found not guilty on count II of the information charging him with violating section 337a, subdivision 2, of the Penal Code, did it follow that he should have been acquitted on count I of the information?*

*No.* **■** Each count in an information or complaint which charges a separate and distinct offense must stand on its own merit and the disposition of one count has no bearing or effect on the judgment with respect to other counts contained in the information or complaint. (*People* v. *Carothers,* 77 Cal.App.2d 252, 254 [1] [175 P.2d 30].)

The foregoing rule is applicable to the facts in the present case.

The judgment and order are and each is affirmed.

Moore, P. J., and Fox, J., concurred.