294 P.2d 972]

[Crim. No. 5526. Second Dist., Div. One. Mar. 19, 1956.]

## THE PEOPLE, Respondent, v. THOMAS MICHAEL KING, Appellant.

(1)

A. H. McConnell for Appellant.

Edmund G. Brown, Attorney General, and Robert S. Rose, Deputy Attorney General, for Respondent.

FOURT, J.—In an information filed by the district attorney of the county of Los Angeles the appellant, Thomas Michael King, was charged in Count I with a violation of section 337a, subdivision 1, Penal Code, a felony, in that he ''did willfully, unlawfully and feloniously engage in poolselling and bookmaking . . .'' In Count II the appellant was charged with the violation of section 337a, subdivision 2, Penal Code, a felony, in that he ''did willfully, unlawfully and feloniously, for gain, hire, reward, gratuitously and otherwise, keep and occupy a house, located at 161 Claremont Avenue, Long Beach, with a book and books, paper and papers, apparatus, device and paraphernalia, for the purpose of recording and registering a bet and bets, and purported bet and bets, and wager and wagers, and purported wager and wagers, and of selling pools, and purported pools, upon the result and ·purported result, of a trial, and purported trial, and contest, and pur-

ported contest, of skill, speed and power of endurance between beasts, to wit, horses.'' In Count III appellant was charged with a violation of section 337a, subdivision 4, Penal Code, a felony, in that he ''did willfully, unlawfully and feloniously, for gain, hire, reward, gratuitously and otherwise, record and register a bet and bets, and a wager and wagers, upon the result and purported result of a trial and purported trial and contest and purported contest of speed and power of endurance between beasts, to wit, horses.''

Appellant was arraigned in the superior court, made a motion to dismiss the information under section 995 of the Penal Code, which was denied, and thereafter he entered his plea of not guilty to each of the counts.

When the cause came on for trial on June 30, 1955, the appellant and all counsel waived trial by jury and stipulated that the People's case would be submitted on the transcript of the testimony taken at the preliminary hearing, with all parties reserving the right to put on such additional testimony as desired.

The transcript of the testimony taken at the preliminary hearing was admitted into evidence. The prosecution put on additional testimony and rested. The appellant rested and the court found him guilty of Counts I, II and III, as charged in the information.

Appellant made a motion for a new trial which was denied; he was then sentenced to imprisonment in the county jail for the term of two months on each count, the sentences to run concurrently. He filed his notice of appeal from the order denying his motion for a new trial and from the judgment.

Appellant did not testify in his own behalf. The following is a fair statement of the facts of the case, based largely on the testimony of Officer R. M. Gardner, a deputy sheriff of Los Angeles County, and Donald Ashton, a representative of the telephone company.

On April 9, 1955, Gardner received information from a confidential informant that Thomas King was using Long Beach telephone numbers 98383 and 81436 for bookmaking purposes. The confidential informant had on previous occasions given competent and correct information to Officer Gardner. Subsequently, Officer Gardner observed the informant dial Long Beach number 98383 on a telephone. Long Beach number 98383 is a number assigned to the telephone located at 161 Claremont Avenue, Belmont Shore, Long

Beach, California, a two-story residence. While Officer Gardner listened in the telephone, the confidential informant stated his name, identified himself, and said, ''Give me ten dollars to win on Rover Bill in the sixth race at Golden Gate.'' A male voice answered, ''O.K., I got your bet.''

Officer Gardner was then told by Deputy Sheriff Greenlees that he had called Long Beach number 98383 and had obtained race results. Officer Gardner instructed Deputy Greenlees to go down to the corner and again call the location. Deputy Greenlees went to the corner and subsequently returned, and informed Officer Gardner that he had again dialed that number and had for the second time obtained race results.

At approximately 4:15 p. m. Officer Gardner, Sergeant Jacobson of the Long Beach Police Department and several other sheriff's deputies proceeded to the 161 Claremont Avenue residence. Officer Gardner then knocked on the door and identified himself. After waiting for approximately two minutes and after receiving no response to his knock, Officer Gardner forced open the door, by kicking it in. After their entry the officers found the appellant, Thomas King, seated at a table in the dining room portion of the lower floor. In front of appellant were numerous pieces of paper, two telephones, pencils and several documents which Officer Gardner, a qualified expert in the ways, means, devices, paraphernalia commonly used in Los Angeles County for bookmaking, identified as betting markers and scratch sheets. In the officer's opinion, ''this location is what is commonly called a phone spot, which is a location where bets are received over the telephone and reported on pieces of paper.''

At about 4.30 p. m. the telephone rang. Officer Gardner answered the phone. A man's voice replied, ''This is Andy . . . in the eighth race at Golden Gate Field I want 10, 5 and 10 on Fabulous Vega.'' At about 4:35 p. m. the phone rang again and a man's voice stated, ''This is 527, give me $4.00 to win on Mr. Sullivan in the eighth race at Golden Gate.''

Subsequently, appellant informed Officer Gardner that he did not live on the premises at 161 Claremont Avenue; that he had recorded all the bets; that the betting markers were all in his handwriting; that ''he took in approximately $2000 a day in bets over the telephone, for which he was paid $15.00 a day in wages . . .''

■ Appellant contends, in substance, that the information received by the arresting officer, from the confidential inform-

ant, which was offered in evidence to establish probable cause was inadmissible hearsay.

In each of the instances objected to by the appellant the extrajudicial statements were offered in evidence not to prove the truth of the matter asserted, but to establish probable cause to effect the search and seizure. The truth of the information given to Officer Gardner was not in issue, nor was it offered in evidence to prove any element of the offense against the appellant. The evidence in question was offered solely to establish that the officer had reasonable or probable cause to effect the search and seizure. We believe the testimony was admissible, and as such was properly received in evidence.

It is set forth in 6 Wigmore on Evidence, third edition, section 1766, pages 177-178, among other things, the following:

"The theory of the Hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.

. . . . . . . . . . . . .

"The prohibition of the Hearsay rule, then, *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*"

Also in section 1789 of Wigmore (*supra*), where it is stated, at page 235:

"Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned."

 It is settled that reasonable cause to justify an arrest may consist of information obtained from others and is not

limited to evidence that would necessarily be admissible at the trial on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535]; see also *Brinegar* v. *United States,* 338 U. S. 160, 171-176 [69 S.Ct. 1302, 93 L.Ed. 1879]; *United States* v. *Li Fat Tong,* 152 F.2d 650, 652; *Aitken* v. *White,* 93 Cal.App.2d 134, 145 [208 P.2d 788]; *Cook* v. *Singer Sewing Machine Co.,* 138 Cal.App. 418, 422-423 [32 P.2d 430]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36].)

"The term, reasonable or probable cause, has been defined: 'By "reasonable or probable cause" is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty.' (*In re McCarty,* 140 Cal.App. 473, 474 [35 P.2d 568].)

"The term, probable, has been defined as meaning 'having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt.' (*Ex parte Heacock,* 8 Cal.App. 420, 421 [97 P. 77].)" (*People* v. *Novell,* 54 Cal.App.2d 621, 623-624 [129 P.2d 453].)

It was stated in *People* v. *Brite,* 9 Cal.2d 666, at page 687 [72 P.2d 122]: " 'Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.' (Citing cases.) Reasonable or probable cause is a question of law, where there is no conflict to be decided by the court. (Citing cases.)"

Appellant also contends that the confidential informant had ample time to secure a search warrant and that such course should have been followed. It is immaterial whether the informant had time to secure a warrant. The arrest, search and seizure were effected by the officers and not by the informant. The question is whether the officers had probable cause to arrest the appellant and incidentally search the immediate premises.

Penal Code, section 836, provides as follows:

"A peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

. . . . . . . . . . . . . . .

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. . . ."

It is at once apparent, from the facts and circumstances, that the officer had reasonable grounds to warrant the arrest of the appellant.

Having had probable cause to arrest the appellant,—— query, was the entry into the premises lawful? We believe that the entry was lawful.

The officer knocked on the door and identified himself. He waited about two minutes, and receiving no response, forced entry into the premises.

Penal Code, section 844, provides as follows:

"To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

The record does not disclose whether the officer demanded admittance and explained the purpose for which he desired admittance.

In the case of *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6], the officers had information, some of which had been very recently acquired, that the defendant was selling narcotics from a certain house. The officers went to the door of the house and knocked. The officers then heard a voice say "Wait a minute," and also heard the sound of retreating footsteps. One of the officers kicked the door open and rushed in and in one of the rooms saw the defendant with a spoon in his hand headed toward the bedroom. The defendant was caught and the spoon taken. There were traces of heroin on the spoon. The defendant, in the Maddox case, contended, as does the appellant here, that the arrest was illegal because the officers did not comply with section 844 of the Penal Code.

The court said, among other things, at pages 304, 305:

"The question is thus presented whether or not evidence obtained by search incident to an arrest must be excluded when the officer has reasonable cause to make the arrest and search but fails to comply with the requirements of section 844.

. . . . . . . . . . . .

"The answer to this question must be sought in the basic reasons for the exclusionary rule. We considered those reasons again in *People* v. *Martin, supra,* 45 Cal.2d 755 [290 P.2d 855], and expressly rejected the theory that evidence is excluded to redress or punish a past wrong. The evidence is excluded 'on the ground that the government must not be allowed to profit by its own wrong and thus encouraged in the lawless enforcement of the law.' (45 Cal.2d at p. 761.)

Accordingly, we held in the Martin case and in *People* v. *Boyles, supra,* 45 Cal.2d 652, 654 [290 P.2d 535], that illegal conduct that was entirely unrelated and collateral to the securing of the evidence objected to does not render that evidence inadmissible. (See also *Rogers* v. *Superior Court,* 46 Cal.2d 3, 10, 11 [291 P.2d 929].) . . .

"The demand and explanation requirements of section 844 present a more difficult problem. The officer's compliance with them will delay his entry, and cases might arise in which the delay would permit destruction or secretion of evidence so that what the search turns up would depend on the officer's compliance with the section. In other cases, however, the evidence may not be readily disposed of, and in still others it may be impossible to determine whether or not the evidence would still have been available had there been the delay incident to complying with the section.

"It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. (*Read* v. *Case,* 4 Conn. 166, 170 [10 Am.Dec. 110] ; see Rest., Torts, § 206, com. d.) Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance. When as in this case, he has reasonable grounds to believe a felony is being committed and hears retreating footsteps, the conclusion that his peril would be increased or that the felon would escape if he demanded entrance and explained his purpose, is not unreasonable. In this proceeding we are not concerned with whether or not the officer's failure to do so would have justified defendant in using force to protect his person or property, or whether or

not a jury in a trespass action might conclude that reasonable cause for the officer's failure to comply with the demand and explanation requirements did not exist. Moreover, since the officer's right to invade defendant's privacy clearly appears, there is no compelling need for strict compliance with the requirements of section 844 to protect basic constitutional guarantees. (*Cf. People* v. *Boyles, supra,* 45 Cal.2d 652, 655; *People* v. *Cahan, supra,* 44 Cal.2d 434, 442 [282 P.2d 905] footnote.) ■ We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains.''

■ Appellant further contends that it was error for the court to receive evidence of the conversations on the telephone between the officer and those who called the house with reference to certain bets. The court, in *People* v. *Radley,* 68 Cal. App.2d 607, in a similar situation, stated at page 609 [157 P.2d 426] : ''It is the established rule that the court may properly receive the evidence of such conversations, not for the purpose of establishing the truth of what was said over the telephone, but for the purpose of establishing that the room was being occupied for placing bets on horse races. (*People* v. *Joffee,* 45 Cal.App.2d 233, 235 [113 P.2d 901] ; *People* v. *Reifenstuhl,* 37 Cal.App.2d 402, 405 [99 P.2d 564].)''

We believe the evidence was properly admitted.

In our opinion the arrest was lawful; the search was contemporaneous with and incident to the lawful arrest, and the seizure was lawful; and further, that all of the evidence was properly admitted.

The order denying the appellant's motion for a new trial and the judgment are, and each of them is, affirmed.

Doran, Acting P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 18, 1956.