[Crim. No. 6144.  In Bank.  Nov. 22, 1957.]

THE PEOPLE, Appellant, v. JOHN JACK FISCHER, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Lewis Watnick and Fred N. Whichello, Deputy District Attorneys, for Appellant.

Henry Galen for Respondent.

SHENK, J.—By information the defendant was charged with one count of bookmaking, one count of unlawfully keeping and occupying an apartment for the purpose of recording and registering bets on horse races, and one count of having recorded and registered a bet or bets on horse races. His motion to set the information aside (Pen. Code, § 995) was granted on the ground that the evidence against him was obtained by illegal search and seizure in violation of his constitutional rights. The People appeal.

On July 21, 1956, Deputy Sheriff Frank W. Bridges was informed by his captain that bookmaking was being conducted over telephone number Angelus 3-2811 which was listed at 2238 Cowlin Street in East Los Angeles. Bridges and three other deputies went to that address at approximately 1:40 p.m. The deputies kept the front and rear entrances to that place under surveillance for 10 to 15 minutes. That address was for one of two duplexes located in a single story frame building. There were separate entrances and exits for each duplex. Bridges stationed himself in a glass-windowed telephone booth some 100 to 200 feet south from which location he could watch the front entrance. From this place Bridges dialed Angelus 3-2811. A male voice answered. The following ensued. Bridges: This is Al for Red. I want two to win on Satin Lady in the second. Voice: All right. Wait a minute, who is this? Bridges: It is Al for Red. Voice: I don't know what you are talking about. Bridges: Shall I have Red call you? Voice: Yes. Bridges then hung up the phone, yelled to a fellow deputy "It's good" and proceeded toward the front entrance. No one had entered or left Number 2238 during this surveillance. The defendant was then seen leaving this address. He was carrying a National Daily Reporter scratch sheet under his arm. When the defendant was several feet from the door to Number 2238, Bridges reached him, informed him of his identity and stated that he was arresting the defendant on suspicion of bookmaking. The two of them went into the premises at Number 2238. Bridges there observed a telephone with the number Angelus 3-2811, and noticed that there were a small blackboard, a box of chalk and several pencils near the telephone. There was no evidence that anyone else was on the premises. The defendant was asked how long he had been bookmaking at the location and he stated "For one day." He added that he had been hired by a man known as Ben Zack to take bets over the telephone at that location, using the blackboard and chalk for this

purpose; that at various times during the day a person would call him and would relay these bets out and then he would erase the blackboard. The National Daily Reporter scratch sheet he carried was for July 21, the day of the arrest.

The defendant placed certain articles on the table, among them several keys. He was asked if any of the keys belonged to his car and he stated that they did. He replied that he had a Kaiser and that it was parked "around the corner." Bridges asked if they could look at the car and the defendant said "yes." Bridges handed the keys to deputy Collins and in the defendant's presence told him to search the vehicle. Collins then left the house, found the car and looked through the window. He was able to observe some yellow pieces of paper approximately 3 to 3½ inches wide partially under a newspaper. There was some writing on these yellow papers but he could not read it through the window. The right front door was unlocked. He opened the door, picked up the newspaper and the yellow papers. At the preliminary hearing these yellow papers were identified as betting markers containing bets on horses running at various tracks throughout the country and numerals or symbols of bettors. Certain figures and letters thereon indicated the third race at Jamaica Race Track, a $5.00 win wager which the horse had won and the amount of the payoff.

While Bridges was in the house with the defendant immediately following the arrest the telephone rang several times and Bridges answered it. On one occasion a woman's voice stated: This is 111, and for 112 and 113 I want four to win on Roman Disk in the second. A few minutes later another call came in and a voice stated: This is 207, where is Jack? Bridges replied that Jack had gone out, that it was Frank and everything was okay. The voice then said: Give me two to win parlay from Satin Lady in the second to Count Chick in the seventh, and a two to place parlay from Mott in the third to Count Chick in the seventh. In another call a male voice stated: This is number 110. I want two and two on Leona Welch, two and two on Betty Rose, two to win on Social Climber, two and two on Spike, $2.00 to place on All She Wrote, and a $2.00 place parlay from All She Wrote to Breezing Bebe.

Officer Bridges was qualified at the trial as an expert with reference to bookmaking procedures in Los Angeles County. He compared these telephone conversations with the scratch sheet carried by the defendant at the time of his arrest and

discovered that the horses' names given over the telephone appeared in the scratch sheet, that they were running that day, and that these conversations were bets on horses running that day. He compared the yellow betting markers with the scratch sheet and testified that they contained bets on horses running at various tracks located throughout the country. A handwriting expert testified that in his opinion the handwriting on the yellow betting markers was that of the defendant.

The crucial issue at the preliminary hearing was the lawfulness of the search and seizure.

Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250]; *People* v. *Brite,* 9 Cal.2d 666, 687 [72 P.2d 122]; *Trowbridge* v. *Superior Court,* 144 Cal.App. 2d 13, 17 [300 P.2d 222].) Probable cause may exist even though there may be some room for doubt. (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344]; *People* v. *Platt,* 124 Cal. App.2d 123, 130-131 [268 P.2d 529].) The court and not the officer must make the determination whether the officer's belief is based upon reasonable cause. (*People* v. *Burke,* 47 Cal.2d 45, 48 [301 P.2d 241]; *Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Gorg,* 45 Cal. 2d 776 [291 P.2d 469]; *People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535].) The test in such case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial.

Bridges testified that he believed a felony was being committed at the time he made the arrest. He disclosed the source and nature of his advance information. The defendant did not challenge the source of the information. It came from Bridges' superior officer, the captain of the vice detail. Nor did the defendant challenge its reliability. His sole objection was that the information was hearsay. It was not objectionable as hearsay since it was not offered to prove the truth of the matter asserted. It was not limited to evidence that would be admissible only on the trial on the merits. On this record the court properly overruled this objection. (*Brinegar* v. *United States,* 338 U.S. 160, 171-176 [69 S.Ct. 1302, 93 L.Ed. 1879]; *Carroll* v. *United States,* 267 U.S. 132, 160-161 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790]; *United States* v. *Li Fat Tong,* 152 F.2d 650; *United States* v. *Heitner,*

149 F.2d 105, 106-107; *Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294; *People* v. *Boyles, supra,* 45 Cal.2d 652, 656 [290 P.2d 535].) ██ Moreover, Bridges did not seek to justify the arrest solely on the ground that his superior officer had informed him that a crime was being committed. He presented evidence to the court which would justify the conclusion that his reliance on that information was reasonable. There was evidence apparent to his sense of hearing that a crime was being committed at the address and over the telephone number given him by his captain. A male voice answered the telephone and indicated a willingness to accept a bet. Almost immediately thereafter a male person, the defendant, was seen leaving the premises. There was evidence that no one else had entered or left the premises since this surveillance was begun. With his knowledge and experience of bookmaking practices, the officer was justified in assuming that the person who answered the telephone might become alarmed and attempt to leave the premises, and that the person observed leaving the premises immediately thereafter was the person who answered the telephone.

██ The search of the premises followed as an incident to the arrest. If there was probable cause for the arrest both the arrest and the search were lawful. The evidence found there was seized as part of a lawful search and was not therefore illegally obtained. Here, there was evidence independent of that revealed by the search to justify the arrest.

██ The committing magistrate did not err in receiving evidence of the conversations on the telephone between the arresting officer and those who called the house to place bets. It is pertinent to observe that in the case of a bookmaker the telephone is usually an indispensable facility for the extension and safe operation of his business. It constituted a means by which bets might be placed with the defendant. These conversations came in the midst of the occurrences concerning the defendant at the time of his arrest. They were admitted for the purpose of proving the use to which the telephone was being used. The use of the room occupied by the defendant was in issue and the nature of the telephonic call was a circumstance to establish that fact. (*People* v. *Radley,* 68 Cal. App.2d 607, 609 [157 P.2d 426]; *People* v. *Joffe,* 45 Cal.App. 2d 233, 235 [113 P.2d 901]; *People* v. *Reifenstuhl,* 37 Cal. App.2d 402, 405 [99 P.2d 564].)

There was evidence that the search made of the defendant's car was consented to by him and there is no evidence to the

contrary. ██ Whether in a particular case consent is voluntarily given or is in submission to an express or implied assertion of authority is a question of fact to be determined in the light of all the circumstances. (*People* v. *Burke, supra,* 47 Cal.2d 45, 49; *People* v. *Gorg, supra,* 45 Cal.2d 776, 782; *People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852].) ██ It cannot be said as a matter of law that consent given by a defendant is involuntary because it is given while he is under arrest.

The order is reversed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.