[Crim. No. 6914.   Second Dist., Div. Two.   Feb. 17, 1960.]

THE PEOPLE, Respondent, v. SAM ROVNER, Appellant.

Max Solomon and John J. Bradley for Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

HERNDON, J.—Convicted of bookmaking, defendant appeals from the judgment and from the order denying his motion for a new trial. As his sole contention, he urges that the arresting officer "had no probable cause to arrest him" and, therefore, that both the arrest and the subsequent search of his person were unlawful.

This case presents no close question. Defendant's own summary of the evidence reveals more than adequate support for the trial court's determination that there was reasonable and probable cause for the arrest and the ensuing search. Accordingly, an abbreviated summary of the facts will suffice.

For a period of some 45 minutes on April 16, 1959, the arresting officer observed defendant's activities in a certain bar. On three separate occasions he saw male patrons of the bar approach appellant, two with the racing section of a daily newspaper and one with the National Daily Reporter,

and hold short conversations with him, whereupon defendant would leave the bar with the particular individual, returning within a few minutes.

On April 21, 1959, another officer observed defendant in the same bar for approximately one hour. During this period the officer saw defendant engage in transactions with eight different men. In each instance an individual would approach the front of the bar, look in, and then walk approximately 20 feet west of the entrance to the bar and wait there. Defendant would immediately leave the bar and meet the waiting individual, who, after a brief conversation, would give defendant some money. On one of these occasions a man carrying a brief case went through the same procedure. Within a minute or so after the man looked into the bar defendant walked out, met the man at the same location, looked up and down the street and then steppod off the sidewalk into the alley. The man gave defendant a small, white piece of paper and three bills of unknown denominations. Defendant placed the paper and the bills in his pocket and returned to the bar.

Later, the arresting officer was informed by his fellow officer of the results of the latter's observations as above recited. The arresting officer resumed surveillance of defendant at the same bar on April 24th. Twice he saw male patrons approach defendant and he overhead their conversations with him in which the names of various horses and Tanforan race track were mentioned. A little later the arresting officer left the bar and took up a position some 150 feet away. Thereafter, he observed a man approach the bar and stand just outside its entrance. Defendant then came out of the bar, joined the waiting man and the two walked some 15 or 20 feet in the officer's direction. The man reached into his pocket and removed a copy of the National Daily Reporter, and, together with defendant, appeared to study the paper for a few minutes. The man then removed a bill from his wallet and handed it to defendant, who placed it in his left outside coat pocket. In the meantime, defendant had removed a small yellow pencil and a small piece of paper from his pocket and appeared to make some notations on the paper.

At a prearranged signal from his fellow officers, who also were observing defendant, the arresting officer proceeded in defendant's direction and followed him into the bar. The officer walked up to defendant and identified himself as a police officer. Defendant thereupon put his hands behind his back and a small piece of paper dropped to the floor.

When the officer reached for the paper, defendant blocked him, and there was a slight scuffle. The officer, however, was able to retrieve the paper which fell under a bar stool. The officer picked up the paper, and observed notations thereon, which, according to the officer's testimony, indicated to him that it was a betting marker. Immediately thereupon defendant was placed under arrest and was searched. There was found on his person a $10 bill in the left outside pocket of his coat. Further search revealed a small yellow pencil and $858 in currency. A portion of the money was loose in appellant's trouser pockets and the balance of $400 or $500 was found in his wallet. Following his arrest, defendant freely admitted to the officers that he had been engaged in bookmaking.

We think it undeniable that the evidence above summarized reveals "such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion," that defendant was guilty of a felony. (*People* v. *Cantley*, 163 Cal.App.2d 762, 765 [329 P.2d 993].) The "reasonable cause" to believe that a felony has been committed has been defined as "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*People* v. *Brite*, 9 Cal.2d 666, 687 [72 P.2d 122].) Information which an arresting officer has obtained as a result of previous surveillance of a defendant's activities may provide reasonable cause for an arrest. (*People* v. *Maddox*, 46 Cal.2d 301, 304 [294 P.2d 6].) Probable cause to justify an arrest may consist of information obtained from others, an informer or a superior officer where reliance on such information appears to be reasonable. (*People* v. *Fischer*, 49 Cal.2d 442, 446-447 [317 P.2d 967]; *People* v. *Guy*, 145 Cal.App.2d 481, 486-487 [302 P.2d 657].)

The judgment and order are affirmed.

Fox, P. J., and Ashburn, J., concurred.