[Crim. No. 7918. Second Dist., Div. One. Mar. 12, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOE BARANKO, Defendant and Appellant.

Sheldon W. Andelson for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assist-

ant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendants Baranko and Fisher were jointly charged with violations of the bookmaking statute. The cause was submitted to the trial court on the transcript of the preliminary hearing; Baranko was found guilty of bookmaking in violation of section 337a, subdivision 1, Penal Code. He appeals from the judgment of conviction. Appellant contends that the arrest of codefendant Fisher was not valid thus the subsequent search and seizure were unlawful; that his arrest was not based on probable cause, search of the premises was not incident to a lawful arrest and betting markers and bookmaking paraphernalia were unlawfully seized; and that the lower court erred in receiving certain extrajudicial admissions.

The defendant neither testified nor offered a defense; the testimony of the People's witnesses establishes the following: Upon receiving information from Officer Holmes that bookmaking was being conducted at two locations on 18th Street in the Santa Monica area, Deputy Sheriff Englert and other officers began a surveillance thereof on April 18. On April 23, around 10 a. m. Englert observed a Cadillac automobile driven by defendant go through the location, stay a few minutes and leave; he followed the vehicle to a liquor store where defendant picked up a scratch sheet, a National Daily Reporter, and drove to 2418 Pier Avenue. Englert staked out at that address and ran down the license number of the vehicle which he found to be registered to defendant. On May 6, at approximately 10 a. m., Englert followed defendant from his home at 1504 Pearl Street to a liquor store where the latter again picked up a scratch sheet and drove to 2418 Pier Avenue where he stayed until approximately 6:30 p. m. On May 10 Englert found numerous pieces of betting markers in the alley behind 2418 Pier Avenue which he took to the sheriff's handwriting expert who compared them with a handwriting card previously on file from a prior arrest of defendant; the expert's opinion to Englert was that the handwriting was the same as that of defendant.

On May 11 Englert gave Deputy McFee the foregoing facts and information that bookmaking was being conducted at 2418 Pier Avenue together with a description of defendant's car and identification and photograph of defendant. Thereafter on May 13, McFee began a surveillance at defendant's home;

around 8 :30 a. m. he observed defendant's Cadillac leave the location. He followed defendant to 2418 Pier Avenue where he continued his surveillance. Defendant remained inside approximately 20 minutes when he returned to his automobile; he sat in the vehicle about 10 minutes until codefendant Fisher came out of 2418 Pier Avenue with a small child and entered the car. At 11 :30 defendant and Mrs. Fisher returned to 2418 Pier. Deputy McFee met Officer Holmes and around 1 :30 p. m. knocked on the door of the residence at 2418 Pier Avenue. Codefendant Fisher opened the door; McFee identified himself and placed her under arrest for bookmaking; then stepped inside the room and saw at his immediate left defendant talking on the telephone and writing on a piece of scratch pad. On the table he saw several betting markers and a National Daily Reporter for that day (May 13) ; he then arrested defendant for bookmaking. McFee asked defendant how long he had been making book at that location, he answered "two days"; asked if the markers found on the premises were his, defendant said they were and were in his handwriting. All of the markers were in defendant's handwriting. McFee asked how much action he took at this location and defendant answered "about $200 a day."

McFee had no warrant either for the arrest of defendant or Fisher or for a search of the premises. Section 836, Penal Code, permits a peace officer to arrest a person without a warrant whenever "he has reasonable cause to believe that the person to be arrested has committed a felony . . ." (subd. 3).

█ █ What constitutes "reasonable cause" depends upon the factual situation presented or apparent to the officers at the time they were required to act (*People* v. *Ingle,* 53 Cal. 2d 407 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73] ) ; and the weight to be accorded the information in their possession at that time is for the trial court which determines whether the information, circumstances and facts upon which their belief that defendant has committed a felony was based constituted reasonable cause. (*People* v. *Fisher,* 184 Cal.App.2d 308 [7 Cal.Rptr. 461] ; *People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535] ; *People* v. *Carella,* 191 Cal.App.2d 115 [12 Cal.Rptr. 446].) █ "Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion. that the person is guilty of a crime." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577] ;

*People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967] ; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178 [281 P.2d 250] ; *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73].)

 The evidence establishes that at the time he knocked on the door at 2418 Pier Avenue, Deputy McFee had in his possession not only the results of his own observation of defendant on May 13 but a description of defendant's automobile, identification and his photograph; information that bookmaking activities were being conducted at that address; and further information that Deputy Englert had observed defendant on three separate days leave his home around 10 a. m., buy a scratch sheet, go to 2418 Pier Avenue, remain there the day and leave around 6:30 p. m., and that pieces of betting markers he had picked up in the rear of the residence on Pier Avenue were established to be in defendant's handwriting. It seems clear that this evidence furnishes ample support for the trial court's implied finding that McFee had reasonable cause to believe that defendant was engaged in bookmaking, a felony, on the premises. These circumstances closely resemble those leading to the arrest of defendant in *People* v. *Lundy,* 151 Cal.App.2d 244 [311 P.2d 601]. Pursuant to information from an informant that bookmaking activities were being conducted on the premises, officers kept an apartment under surveillance for several days; they observed defendant each morning leave with his dog, drive to a cigar store and buy a racing form, go to the park and let his dog run, and about 10:30 a. m. enter the premises where he remained until approximately 6 p. m. On one occasion while the dog exercised in the park, they saw defendant tear up betting markers and place the scraps in a garbage can. The court held that these facts alone furnished support for the lower court's finding that the officers had reasonable cause to believe defendant had committed a felony. Although other evidence disclosed a telephone call to defendant by an unnamed informant in the presence of the officers, the court excluded it from its consideration in determining the issue of probable cause.

Appellant has cited *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10], and *People* v. *Foreman,* 112 Cal.App.2d 616 [246 P.2d 979], to support his argument that there was no probable cause to arrest him; but there is no similarity whatever between the facts in either of these cases and those in the one at bar or in *People* v. *Lundy, supra.* Contrary to the situation here, the facts surrounding defendant's arrest in *People* v.

*Sanders,* 46 Cal.2d 247 [294 P.2d 10], were entirely consistent with his legitimate conduct of a phonograph record business and thus did not constitute reasonable cause to make an arrest without a warrant. Although defendant was a known bookmaker, the court held the officers were not justified in entering a second room in his record shop after observing, through a hole in the door, defendant standing behind a desk in a room in which there was no telephone, with a pencil in his hand and two pads of paper containing writing in front of him, even though a bookmaker had been arrested on the premises the day before. Nor is *People* v. *Foreman,* 112 Cal. App.2d 616 [246 P.2d 979], applicable. No issue of probable cause was involved therein; the court only concluded that the evidence was insufficient to sustain a conviction of the crime of occupying a room for bookmaking purposes.

 Appellant argues that the arrest of codefendant Fisher, after she opened the door of the room in response to the officer's knock, was unlawful; thus, the officers could neither arrest defendant, search the premises nor seize the bookmaking paraphernalia. Assuming from the record before us that there was no probable cause for Fisher's arrest, we fail to see how that fact, under the instant circumstances, could in any way affect the validity of defendant's arrest or, as an incident thereto, the seizure of the betting markers and other bookmaking paraphernalia. When McFee knocked on the door he had reasonable cause to believe that defendant was on the premises and had engaged in, and was then conducting, bookmaking activities, a felony; thus he had a right to enter. Had defendant, and not Fisher, opened the door and been arrested, his arrest and the seizure of the evidence could not be open to question; had entry been denied the officers by defendant, they could well have used reasonable force to enter. (Pen. Code, § 844.) However, when Fisher opened the door, the officers thereby gained lawful entry to the room; the fact that they arrested her before arresting the defendant is of no significance in determining whether his arrest and the subsequent seizure were valid. While the opening of the door by Fisher facilitated the officers' entry to the room, Fisher's arrest, lawful or otherwise, neither aided nor had any relationship to or bearing on the officers' arrest of defendant or their seizure of the bookmaking paraphernalia. Entirely independent of Fisher, the officers had probable cause to arrest defendant; they gained lawful entry to the room by way of the door opened by Fisher; seeing defendant

therein, they properly arrested him; and incident thereto the officers lawfully took the evidence, not from Fisher, but from the defendant. This is not a situation in which, through a violation of the rights of a third person, evidence against the defendant was illegally obtained; regardless of the arrest of Fisher, the bookmaking paraphernalia was legally taken. The court in *People* v. *Martin,* 45 Cal.2d 755 [290 P.2d 855], points up this distinction. The case of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], held that " 'evidence obtained by police officers in violation of federal and state constitutional prohibitions against *unreasonable* search and seizure is inadmissible,' it did 'not purport to inhibit the right of law enforcement officers to conduct a *reasonable* search and seizure incident to a valid arrest.' (*People* v. *Coleman,* 134 Cal.App.2d 594, 599 [286 P.2d 582].) " (*People* v. *Winston,* 46 Cal.2d 151, 162 [293 P.2d 40].) It is true that law enforcement officers are not allowed to evade the exclusionary rule by obtaining evidence in violation of the rights of third parties, but the issue first arises whether the evidence was illegally obtained. (*People* v. *Martin,* 45 Cal.2d 775 [290 P.2d 855].) It is clear from the record before us that the evidence was neither obtained from the third person (Fisher), nor by virtue of any illegal act done in connection with her arrest, but was legally taken solely from *defendant* as an incident to *his* valid arrest, and hence admissible.

 While incident to a lawful arrest the officers have a right without a warrant and in good faith to make a reasonable search of the premises and seize during such a search evidence related to the crime (*People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40]; *In re Dixon,* 41 Cal.2d 756 [264 P.2d 513]), no actual search was here involved. When the officers entered the room they immediately saw defendant at their left talking into a telephone and writing on a piece of scratch pad, and observed on the table several betting markers and a National Daily Reporter for that day. All of the evidence was on top of the table in plain sight of the officers; it was unnecessary for them to, and the officers did not, search the premises to find it. "To observe that which is open and patent is not a search." (*People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896]; *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721].)

 At this point, appellant says that no corpus delicti has been established; thus, his extrajudicial admissions were improperly received in evidence. The admissions referred to

constitute the following answers to certain questions by officers; defendant said—he had been making book at 2418 Pier Avenue for two days; that the betting markers found on the premises were his and were in his handwriting, and that he had been taking about $200 a day action.

The betting markers and scratch pad which were in defendant's handwriting, the National Daily Reporter and the pieces of betting markers found in the rear of the premises established to be in defendant's handwriting, having been properly received in evidence, together with the testimony of officers Englert and McFee relative to their personal observations, constitute ample evidence of both a direct and circumstantial nature to establish the corpus delicti. (*People* v. *Wilkins,* 158 Cal. 530 [111 P. 612], *People* v. *Watters,* 202 Cal. 154 [259 P. 442]; *People* v. *Scott,* 176 Cal.App.2d 458 [1 Cal.Rptr. 600].) It is more than sufficient to convince a reasonable person of the fact that defendant was engaged in bookmaking on the premises in violation of section 337a, subdivision 1. Betting markers in defendant's handwriting in proximity to a current scratch sheet, and defendant sitting nearby using the telephone and making notations on a scratch pad, certainly do not raise any inference of legitimate business operations being conducted by defendant. "The corpus delicti is established in a bookmaking case so as to render admissible evidence of defendant's extrajudicial statements where betting markers and owe sheets, some of the entries on which are shown to have been made by defendant, and to have been found in his establishment, are received in evidence. It is a fair inference from such evidence that bookmaking has been carried on there. (*People* v. *Cohen,* 107 Cal. App.2d (hearing denied by the Supreme Court) 334, 343 [10] [237 P.2d 301].)" (*People* v. *Glascock,* 124 Cal.App.2d 169, 171 [268 P.2d 137].) In the instant case the evidence establishes all of the elements necessary to meet the requirements of the foregoing rule. The corpus delicti having been established, the extrajudicial admissions of defendant were properly received. (*People* v. *Gem Hang,* 131 Cal.App.2d 69 [280 P.2d 28]; *People* v. *Selby,* 198 Cal. 426 [245 P. 426].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied March 29, 1962, and appellant's petition for a hearing by the Supreme Court was denied May 9, 1962.