[Crim. No. 9072. Second Dist., Div. One. Dec. 23, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EUNICE RUSSELL, Defendant and Appellant.

Walter L. Gordon, Jr., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was found guilty of a violation of section 337a, subdivision 2, Penal Code (occupying a house with books, papers, apparatus and paraphernalia for the purpose of recording and registering horseracing bets). He appeals from the judgment of conviction.

Acting on information from a sergeant in administrative vice that by dialing a certain telephone number bets could be placed on numbers and horses, Officer Hubbard determined from the telephone company that the number was registered to a woman at 11616 South San Pedro. On June 1, 1962, around 1 p.m., while his partner, Officer Nishimura, "staked on" the address, he went to a telephone near by and dialed the number; a male voice answered and the following took place:

Officer, "Hello. This is Jack."

Voice, "Where have you been? I have been trying to get a hold of you."

Officer, "I have got some action for you."

Voice, "Go ahead."

Officer, "141 for a dollar."

Voice, "Wait a minute. You have got numbers, not horses. Wait until I get my other sheet." After a slight delay the voice came back and said, "Okay. Go ahead." The officer gave him number 141 for a dollar at the same time giving by radio a prearranged signal to his partner "to go ahead"; he continued to give other numbers and amounts until he heard a loud noise, then his partner's voice, through the receiver. He then went to the premises where he found his partner, two officers and the defendant.

Officer Nishimura, on a prearranged signal from Hubbard, proceeded to 11616 South San Pedro; he forced entry and told defendant, standing in the hallway, not to move, they were police officers and he was under arrest. In front of defendant was a telephone with the receiver off the hook. Officer Nishimura picked it up and said, "Hello"; Officer Hubbard answered, "Nish?" and he replied, "Yes. We have got him Hubbard. Come on in." Defendant's voice resembled the one with which Hubbard had just conversed over that telephone. They seized numerous papers—betting and numbers markers, numbers bets, and five National Daily Reporters, for June 1, 1962, and four previous days. (Exs. 1 through 4.) The betting markers and the National Daily Reporters are commonly used in bookmaking; the other papers

are used in a numbers lottery. The arrest was made without a warrant.

As to probable cause defendant testified that he lived on the premises with his mother; he received a telephone call but said nothing over the telephone; the caller said: "This is Jack. They say I have some numbers for you"; he took $8.00 worth of numbers from him; and "horses" were not mentioned by him. He denied he said to Hubbard: "Wait a minute. You have got numbers there, not horses. Wait until I get my other sheet."

Appellant argues that the arrest was made without probable cause; and that the failure of the officers to demand admittance and explain their purpose before entry (Pen. Code, § 844) rendered the search and seizure of Exhibits 1 through 4 unlawful.

■ On the factual issue whether defendant mentioned "horses" and his "other sheet" to Hubbard on the telephone, the trial court, as it had a right to do, rejected defendant's testimony and accepted the officer's version of the conversation. ■ Thus, at the time of arrest the officers knew from their superior that bookmaking was being conducted over the telephone at this number—that by dialing it bets could be placed on numbers and horses; they also knew from the prearranged signal that a person talking from that number was then ready and willing to accept bets on horses —when Hubbard began making numbers bets the voice said, "Wait a minute. You have got numbers, not horses. Wait until I get my other sheet." This justified the conclusion that their original information was corroborated and that the one talking to Hubbard was engaged in both bookmaking and the numbers racket. From this they could properly conclude, and had reasonable cause to believe, that both felony and misdemeanor offenses had been and were being committed on the premises. (*People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967]; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6]; *People* v. *King,* 140 Cal.App.2d 1 [294 P.2d 972].) The facts are not unlike those found in *People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967]. There Deputy Bridges, acting upon information from his captain that bookmaking was being conducted over a certain telephone number, called it while other deputies watched the premises; a male voice first accepted his bet, then refused it; Bridges hung up and signaled the others to proceed to the premises where they saw

defendant leaving, and arrested him. Holding there was probable cause, the court said: "Moreover, Bridges did not seek to justify the arrest solely on the ground that his superior officer had informed him that a crime was being committed. He presented evidence to the court which would justify the conclusion that his reliance on that information was reasonable. There was evidence apparent to his sense of hearing that a crime was being committed at the address and over the telephone number given him by his captain. A male voice answered the telephone and indicated a willingness to accept a bet." (*People* v. *Fischer*, 49 Cal.2d 442, 447 [317 P.2d 967].)

On the issue of entry the officers' failure to comply with the mandate of section 844, Penal Code, under the circumstances, does not invalidate the search and seizure made incident to the ensuing arrest. While the officer himself did not directly offer any justification for forcing entry without first "having demanded admittance and explained the purpose for which admittance" was desired (Pen. Code, § 844), the evidence is clear that the facts known to him before entry were not inconsistent with the good-faith belief on his part that compliance with the section was excused. After receiving the prearranged signal "to go ahead" (which, in view of their information, experience in bookmaking activities, and obvious prior agreement and understanding, we can only assume meant that the number answered, the suspect was on the premises, he had been, or was in the process of, there committing felony and misdemeanor offenses and to enter the premises as quickly as possible), Nishimura had reasonable grounds for believing that the person to whom Hubbard was talking was in 11616 South San Pedro and had engaged in bookmaking there and was then occupying premises with bookmaking paraphernalia for the purpose of receiving and recording bets. Experienced in bookmaking activities, familiar with the manner in which they are carried on and the habits of those so engaged, and knowing the practices employed, the papers, apparatus and paraphernalia used, and the ease with which records of bets can be destroyed, Nishimura was justified in assuming that if he first informed the occupant of his presence and demanded admission to the premises, the latter might become alarmed and break the telephone connection, attempt to destroy betting markers and other incriminating evidence, and try to leave. (*People* v.

*Fischer,* 49 Cal.2d 442 [317 P.2d 967]; *People* v. *Shelton,* 151 Cal.App.2d 587 [311 P.2d 859].)

In determining the legality of a search and seizure made as an incident to a lawful arrest, the law does not demand a strict compliance with the provisions of section 844, in all cases (*People* v. *Hammond,* 54 Cal.2d 846 [9 Cal. Rptr. 233, 357 P.2d 289]; *People* v. *Barnett,* 156 Cal.App.2d 803 [320 P.2d 128]; *People* v. *Shelton,* 151 Cal.App.2d 587 [311 P.2d 859]; *People* v. *King,* 140 Cal.App.2d 1 [294 P.2d 972]); for instance, noncompliance is justified in situations in which, had the officer demanded admittance and stated his purpose, the arrest would probably have been frustrated or destruction or secretion of incriminating evidence might have resulted or the suspect might have escaped. (*People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6]; *People* v. *Bookout,* 197 Cal.App.2d 457 [17 Cal.Rptr. 213]; *People* v. *Morris,* 157 Cal.App.2d 81 [320 P.2d 67]; *People* v. *Shelton,* 151 Cal. App.2d 587 [311 P.2d 859]; *People* v. *King,* 140 Cal.App.2d 1 [294 P.2d 972]; *People* v. *Sayles,* 140 Cal.App.2d 657 [295 P.2d 579].)

We conclude, therefore, that when there is reasonable cause to make an arrest and search and the facts known to the arresting officer before his entry are not inconsistent with a good-faith belief on his part that compliance with the formal requirements of section 844 is excused, his failure to comply therewith does not justify the exclusion of the evidence he obtains. (*People* v. *Hammond,* 54 Cal.2d 846, 854, 855 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Maddox,* 46 Cal.2d 301, 306-307 [294 P.2d 6]; *People* v. *Barnett,* 156 Cal.App.2d 803 [320 P.2d 128].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1964.