[Crim. No. 9405. Second Dist., Div. One. Aug. 17, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. LOLA VIOLA TERPENNING, Defendant and Appellant.

216

Harry E. Weiss and Burton Marks for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Edward M. Belasco, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of keeping and occupying a residence with paraphernalia for the purpose of recording and registering bets on horse races (Pen. Code, § 337a, subd. 2.) She appeals from the judgment and sentence.

Defendant did not take the stand; only the officers testified. Deputy Sheriff Olsen, an expert in methods, paraphernalia and forms of bookmaking, received information that a Gilbert telephone number was involved in a call-back relay. This is a type of bookmaking operation wherein the bettor telephones the relay number and makes a bet; the person answering the call then, by telephone, relays the information concerning it to a person at the "back," which is a location where the betting records are kept; and the person at the "back" either telephones the bettor directly to verify the bet or accepts the bet as transmitted by the relay. Ascertaining that the Gilbert number was registered at 9585 Garvey Boulevard, Deputy Olsen, together with Deputies Havlovic and Halfon, went to a telephone located approximately 100 feet from the address and dialed the number while his partners observed the premises. A woman answered, "Hello," and Deputy Olsen said, "This Kenny S."; she said, "Yes, Kenny, what is your phone number?" He gave her the number of the telephone from which he was calling and said he had a daily double bet which he wanted to place, asking, "Do I still have time?" She replied, "I don't know whether you have time or not. You'll have to wait until they call you back and they will tell you. I can't take any bets here." Still on the line, Deputy Olsen signaled to his partners who went to the rear of the residence and, finding the door locked, forced it open and went inside; when Olsen heard the voice of Deputy Havlovic say into the telephone, "Okay, Gerry, we're in, come on over," he hung up and walked to the premises.

When the deputies forced their way in, they found defendant alone sitting on the bed with the telephone in her left hand and a piece of chalk in her right; in the room were a red box of 20 sticks of chalk, erasers and two blackboards. On one blackboard were eight names written in chalk, beginning with "Gibbs" and ending with "Kenny," the last two names being followed by telephone numbers; after some of the names were tallies indicating the number of calls. Defendant admitted the chalk writings were hers. The telephone rang 6 times and Deputy Olsen answered; each time the caller identified himself and sought to place one or more bets

on certain horses running at various race tracks. It was the opinion of Deputy Havlovic that the premises constituted a call-back relay spot in the field of bookmaking, and that the paraphernalia found thereon was that used in bookmaking. He described the operation as follows: the word "Gibbs" was the name of a bettor or agent who had called defendant at the Gilbert number and left his name; later, in another call to the Gilbert number by a third person, defendant gave the name "Gibbs" to him; and in turn he called "Gibbs" and picked up the bets he wanted to place. The deputy explained that a call-back relay spot is, in part, a phone spot operated in that manner to keep the telephone contact free from any markers, records or other papers; the purpose is to minimize the chance of bookmakers getting caught with the evidence on hand.

Appellant's first contention is that the paraphernalia must be used for the purpose of recording a bet, and the evidence shows defendant took no bets on the premises and the room was not occupied for the purpose of recording bets.

■ The offense denounced by section 337a, subdivision 2, Penal Code, is not the taking of bets, but the occupancy of a place with the necessary equipment for the purpose of registering them. (*People* v. *Goldstein,* 139 Cal.App.2d 146, 156 [293 P.2d 495] ; *People* v. *Barnhart,* 66 Cal.App.2d 714, 721 [153 P.2d 214].) ■ Section 337a, subdivision 2, makes it a felony for one to occupy any room with "pharaphernalia for the purpose of recording or registering any bet or bets" on a horse race. There is no requirement that the person occupying such premises must be the one who records or registers the bets, or that they be registered or recorded on the premises. As long as the paraphernalia therein is used for the purpose of recording or registering bets, regardless of who actually takes the wagers and records the same, or where it is done, an offense has been committed. A call-back relay spot operated in the manner described herein avoids the appearance of illegal activity by having the actual bets taken and recorded and the attendant books and papers kept elsewhere, but it is nevertheless the focal point of a bookmaking activity and a necessary link in the chain of illegal operation. While defendant took no bets on the premises and kept no records of the same, it is clear from the testimony of two experts that her telephone activities thereon were part of a bookmaking operation in which she relayed names of bettors, their telephone numbers and information concerning bets, which she received over the telephone, to a third person; and that,

the telephone, blackboards, erasers and chalk in her room were paraphernalia used by her for the purpose of having someone working with her at the "back" take and record the bets, and if necessary, call the bettor to verify the bet. Expert testimony may be used to identify, interpret and explain bookmaking paraphernalia and to prove bookmaking activities; and the qualifications of Deputies Havlovic and Olsen are beyond question. (*People* v. *Bonman,* 201 Cal.App.2d 248 [20 Cal.Rptr. 238]; *People* v. *Covert,* 219 Cal.App.2d 363 [33 Cal. Rptr. 236].) The writings on the blackboard in the handwriting of defendant consisted of names, telephone numbers and tallies, all, according to the interpretation of the deputies, of a character familiar to bookmaking operations. That which makes defendant's illegal activities apparent beyond doubt are the six bookmaking-type telephone calls received by Deputy Olsen while on the premises.

 Moreover, defendant did not avail herself of the opportunity to explain or deny the incriminating circumstances; she did not take the witness stand. This "may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable." (*People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3].)

 Appellant's final contention, that there was no reasonable cause for her arrest, thus the evidence was illegally obtained, is without merit. Deputy Olsen, having information that defendant's number was involved in a call-back relay, called her while two deputies, within his sight, kept the premises under observation; when defendant answered he said he was "Kenny S.," and she asked his telephone number which he gave her; and he told her he wanted to place a daily double bet and asked if he still had time, and she said, "I don't know whether you have time or not. You'll have to wait until they call you back and they will tell you. I can't take any bets here." This justified the conclusion that his original information, that the number was involved in a call-back relay, was corroborated and that the woman talking to him was engaged in such a bookmaking operation. There was evidence apparent to his sense of hearing that a crime was being committed at the address and over the telephone at that number. (*People* v. *Russell,* 223 Cal.App.2d 733, 736-737 [36 Cal.Rptr. 27]; *People* v. *Fischer,* 49 Cal.2d 442, 447 [317 P.2d 967]; *People* v. *Bradley,* 152 Cal.App.2d 527 [314 P.2d 108].) From this the deputies could properly conclude, and had

reasonable cause to believe, that a felony had been and was being committed on the premises. (*People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967]; *People* v. *Madden,* 46 Cal.2d 301 [294 P.2d 6]; *People* v. *Russell,* 223 Cal.App.2d 733 [36 Cal.Rptr. 27]; *People* v. *Baranko,* 201 Cal.App.2d 189 [20 Cal.Rptr. 139].) When the deputies entered after a pre-arranged signal from Olsen, they found defendant still holding the receiver of the telephone, with the line open to Olsen, in her left hand and a piece of chalk in her right; and in the room near her were erasers, chalk and two small blackboards on which, in her writing, was a list of names, numbers and tallies.

■ The forced entry onto the premises and subsequent arrest were not illegal. At that time the deputies knew that defendant was in the process of committing a felony; they also had good reason to believe that unless then apprehended defendant would continue to commit similar offenses, the arrest would be frustrated and the incriminating evidence would be destroyed. (*People* v. *Russell,* 223 Cal.App.2d 733, 738 [36 Cal.Rptr. 27]; *People* v. *Aguilar,* 217 Cal.App.2d 260, 262 [31 Cal.Rptr. 893].)

While the officers testified that the chalk, two blackboards and erasers were the product of a "search," it is evident that these objects were in plain sight when the officers entered the bedroom and that it was unnecessary for them to search the premises to find them. ■ "To observe that which is open and patent is not a search." (*People* v. *Jaurequi,* 142 Cal.App.2d 555, 561 [298 P.2d 896]; *People* v. *Roberts,* 47 Cal. 2d 374 [303 P.2d 721]; *People* v. *Baranko,* 201 Cal.App.2d 189 [20 Cal.Rptr. 139].) ■ In any event, incident to a lawful arrest the officers have a right, without a warrant and in good faith, to make a reasonable search of the premises and seize during the search such evidence related to the crime. (*People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40]; *In re Dixon,* 41 Cal. 2d 756 [264 P.2d 513]; *People* v. *Baranko,* 201 Cal.App.2d 189 [20 Cal.Rptr. 139].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.