[Crim. No. 21885. First Dist., Div. Three. Nov. 18, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN SCALZI, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jean R. Sternberg, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, and John H. Sugiyama, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**WHITE, P. J.**—John Scalzi appeals from a judgment entered on jury's verdicts finding him guilty of feloniously conspiring to sell methamphetamine (Pen. Code, § 182, subd. 1) and possession of methamphetamine for sale (Health & Saf. Code, § 11378). The Honorable Ellis R. Randall, judge, in the course of suspending the imposition of "judgment and sentence" stated: "I'm not going to require any jail time because as I say, I believe his story. That he went over to that place to borrow some money, and he just happened to be coming in at the wrong time. And the young lady and Mr. McDaniel were really the participants in this case. So you get your break, and see that you don't get into any problems like this again, okay?"

The "place" referred to in the above quote is 2 Idora Street, Vallejo, the home of friends and coarrestees, Kathy and Robert McDaniel. The "wrong time" is a reference to the fact that approximately 15 minutes after appellant was admitted and seated at the dining room table, Undercover Officer Jaksch, in the company of several other officers, unexpectedly entered the premises to execute arrest and search warrants for the McDaniels and their residence. At the time of the police entry, in addition to appellant, a female acquaintance, Cynthia Leonard, and Mr. McDaniels were seated at the table. Of the trio, only McDaniel ignored the police order to "freeze." Appellant, enjoying a beer and cigarette at the time, complied. According to appellant, he was only present because he was temporarily "laid off" from work as a pipe fitter and was intent on borrowing money for groceries.

However, there was incriminating evidence in plain sight on the table. Jaksch testified that he observed on the dining room table a triple-beam balance scale with white powder on it and a 10-inch by 15-inch mirror with white powder on it in front of McDaniel; a spoon, metal tube, and straw were located between McDaniel and appellant. A small brown sack with 26 bindles of white powder, a wallet, and other packaging paraphernalia were also on the table. A paper with figures was in front of Cynthia Leonard, while three empty plastic bindles were approximately in front of appellant. The white powder, seized by Officer Pearsall, tested out as 34.75 grams of methamphetamine. Penciled on the paper was the notation "60 multiplied by 26" mistakenly figured as $1,840 instead of $1,560.

The jury's findings that the charged overt acts were true make it unmistakably clear that they rejected appellant's version of being *merely present to borrow food money*.[1]

It is not contended that the verdicts are not supported by substantial evidence but only that the evidence is "thin." Appellant's contention is that justice was miscarried by the trial court (1) in admitting irrelevant evidence that was otherwise inadmissible hearsay; (2) in committing *Yarber* error (*People* v. *Yarber* (1979) 90 Cal.App.3d 895 [153 Cal. Rptr. 875]) in its instructions on aiding and abetting; and (3) in neglecting to answer a question posed by the jury concerning the definition of conspiracy. We agree and reverse the judgment.

■ We now set the stage for what we view as the trial court's erroneous application of the judicially carved hearsay exception, i.e.,

---

[1] The jury's verdict in count one after finding appellant guilty of conspiracy states:

#### "FIRST OVERT ACT
"We further find that on or about August 1, 1979, the defendant, JOHN SCALZI did meet at the residence commonly referred as 2 Idora Street, Vallejo, for the purpose of packaging Methamphetamine for sale.

#### "SECOND OVERT ACT
We further find that on or about August 1, 1979, said defendant, JOHN SCALZI did package approximately twenty-six, one gram bindles of Methamphetamine.

#### "THIRD OVERT ACT
"We further find that on or about August 1, 1979, said defendant, JOHN SCALZI, did erroneously determine the street sale value of said twenty-six bindles to be $1,840.00. Value determined by multiplying the twenty-six bindles by current street value of $60. each which should have resulted in the sum of $1,560.00."

declarant's statement relating facts other than his state of mind but offered to prove declarant's state of mind by inference. (Jefferson, Cal. Evidence Benchbook (1978 supp.) § 1.6, p. 26.)

Immediately after observing the above described "incriminating evidence" appellant complied with police orders to raise his hands. Appellant testified that he was then handcuffed to a chair. Five to ten minutes elapsed after appellant's arrest before Officer Jaksch answered three successive telephone calls that followed.

The trial court permitted, in the face of a hearsay objection, Officer Jaksch to relate one telephone conversation after the court instructed the jury. "Ladies and gentlemen, we are going to admit a conversation over the telephone. It's not for the truth of the matter as stated, but only to furnish information to the witness as to what he did later.

"All right. Proceed. Overruled."

(The record reflects that the court and counsel had previously discussed the evidentiary point in chambers.)

Jaksch then testified: "I answered the phone at the Idora Street address and spoke to an unknown female. The female asked if 'John' was there. I informed her, 'No.'

"She asked if I knew where he was. I told her that he had gone to Hazel's house at 71 Porter Street. She then asked me if I knew if he had taken care of business. I asked her, what did she mean? She wanted to know if John had gotten it bagged up. I told her, yeah, that he had taken care of that. He was dropping off some packages.

"Q. Are you familiar with the street jargon 'got it bagged'?

"A. Yes, I am.

"Q. What does that mean to you?

"A. On the street, 'bagged' is a term for packaging of narcotics for sale, basically for transportation.

"Q. How—what did you mean—how did you interpret this phrase she asked you, 'If John had got it bagged up'?

"A. Bagged up.

"Q. 'Bagged up,' how did you interpret that?

"A. That to mean approximately one-ounce of contraband that we had found at the residence that he had gotten it placed into the plastic bindles."

Following this testimony Jaksch was permitted to relate the content of the remaining telephone conversations interpreted with expert testimony as to the significance of the "incriminating evidence" located on the table.

When it is understood that appellant was the only "John" among the suspects in the house, the prejudicial effect of the above-quoted conversation is self-evident. If the clearly hearsay evidence of the "unknown female's" declarations was not otherwise admissible, reversal is clearly required.

Relying upon *People* v. *Duran* (1976) 16 Cal.3d 282, 295 [127 Cal. Rptr. 618, 545 P.2d 1322]; *People* v. *Roberson* (1959) 167 Cal.App.2d 429, 431 [334 P.2d 666]; *People* v. *King* (1956) 140 Cal.App.2d 1, 9 [294 P.2d 972], the People contend the declarations of the unknown female caller were not hearsay evidence because they were not received to prove the truth, i.e., that "John" was there "bagging up." It is urged that "[t]he court properly reasoned that the testimony was circumstantial evidence relevant to explaining why Jaksch booked appellant on those particular charges, since appellant was not told what he was being arrested for until after the telephone conversations took place." For two reasons, we disagree. First, it appears from the record that appellant was informed by Jaksch that he was being arrested on an old warrant for allegedly leaking oil in the streets of Ukiah, and a child nonsupport warrant. Only later during a jail house interview did Jaksch reveal that he harbored a belief that appellant was conspiring to intentionally sell methamphetamine. Second, in any case, Jaksch's state of mind accounting for appellant's arrest, booking and charges was not an issue in the case, therefore irrelevant as a matter of law. The jury was so instructed in the language of CALJIC No. 1.00. "None of these facts [arrest, charges filed or trial] is evidence of his guilt and you must not infer or speculate from any or all of them that he is more likely to be guilty than innocent."

Because Jaksch's state of mind did not tend to prove or disprove any issue in the case, it follows that the Attorney General's reliance on *Duran, supra*; *Roberson, supra*; and *King, supra*, is misplaced. These cases factually illustrate "one important category of nonhearsay evidence—evidence of a declarant's statement that is offered to prove that the statement imparted certain information to the hearer and that the hearer, believing such information to be true, acted in conformity with that belief. The statement is not hearsay, since it is the hearer's reaction to the statement that is the relevant fact sought to be proved, not the truth of the matter asserted in the statement." (Jefferson, Cal. Evidence Benchbook, *supra*, § 1.5, p. 21.) In each of the cited cases the extrajudicial statement circumstantially established the hearer's state of mind which was relevant to an issue in the case, i.e., in *Duran*, it served to explain why he fled the crime scene; in *Roberson*, it served to bolster his contention that he did not sell to a known narcotic agent; and in *King*, it served to show that the officer had probable cause to search. We repeat, Jaksch's *reaction* or state of mind after the telephone conversation and any actions he took based thereon shed no light on any issues presented in the case. Anything Jaksch did in response to the telephone conversation was irrelevant.

■ The Attorney General further contends that trial counsel's failure to specifically object to the evidence as being irrelevant bars the issue on appeal. This contention would have merit if, arguably, the evidence had some relevant nonhearsay probative value. If such were the case a specific "irrelevant" objection would require the trial court to weigh and consider whether the danger of prejudice may outweigh that probative value. However, where, as herein, the evidence is totally devoid of any nonhearsay probative value, the "inadmissible hearsay" objection suffices to preserve appellate review. Further, from this record it appears that a further "irrelevant" objection would have been an idle act. The court and counsel had preargued the evidentiary point in chambers. The trial court simply erred after due deliberation in admitting the evidence for a nonhearsay purpose that had no probative value.

■ The error deprived appellant of a fair trial. The danger of prejudice to the appellant in that the jury would use the statement in a hearsay manner despite the court's limiting instruction is obvious. Appellant's defense was that he was innocently present only intending to borrow $5 for food. The circumstantial evidence admitted of a contrary conclusion but did not render appellant's version implausible. We are unable to find that the jury arrived at its findings without considering

the declarations in telephone conversations for their truth, i.e., that appellant was the "John" who was *there* "bagging up." After all the prosecution conveniently closed its summation by stating: "He [appellant] was the one sitting there bagging the methamphetamines. He was the one that was referred to in the telephone conversation." If the prosecution unwittingly or not succumbed to the irresistible temptation to consider the telephone conversation for the truth of the matter asserted therein, we find it highly likely that the jury did likewise. We are of the opinion that it is reasonably probable that a result more favorable to appellant would have resulted absent the error. Accordingly, we reverse the judgment. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Upon retrial, assuming the essential evidence of record remains substantially as is, we opine that the trial court would err if it failed to instruct in accordance with our decision in *People* v. *Yarber, supra*, 90 Cal.App.3d 895, 916.

Finally, although we find it highly unlikely, if by some strange quirk or coincidence, the second jury inquires of the court "Does the act of borrowing money obtained from the sale of an illegal substance, (knowing beforehand that the money being loaned is obtained from the illegal sales of drugs) constitute conspiracy—sale of drugs" as did the jury herein, we opine that the court should answer "no" in addition to reinstructing on the law of conspiracy. (*People* v. *Hardeman* (1966) 244 Cal.App.2d 1, 51-52 [53 Cal.Rptr. 168], cert. den. 387 U.S. 912 [18 L.Ed.2d 634, 87 S.Ct. 1700].)

Judgment is reversed.

Feinberg, J., and Stern, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.