Filed 5/9/14  P. v. Sanez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DARWIN SANEZ,<br><br>    Defendant and Appellant. | D064020<br><br><br><br>(Super. Ct. No. SCN300835) |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Darwin Sanez appeals his convictions of rape of an unconscious person (Pen. Code, § 261, subd. (a)(4)),[1] rape by foreign object of an unconscious person (§ 289, subd. (d)), and misdemeanor sexual battery (§ 243.4, subd. (e)(1)).

On appeal, Sanez contends the court deprived him of a fair trial and due process of law by permitting victim X.B. to testify that Edelmira Gomez told her Sanez raped X.B. while she was asleep. Sanez contends the testimony was not relevant to any matter in dispute, was double hearsay not within any hearsay exception, and the error was prejudicial and requires reversal. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2011, X.B. attended a party at the home of Lercy Zillman. Around 8:00 a.m., after X.B. consumed approximately eight to 10 alcoholic drinks, Zillman took her to rest on a couch upstairs on the second floor. Zillman left and returned with a blanket to cover X.B. When Zillman returned, X.B. was asleep facing the back of the couch.

After covering X.B., Zillman went into the kitchen on the second floor to make coffee. Sanez was also in the kitchen and began talking to Zillman. Unexpectedly, Sanez pinched Zillman's buttocks, which she interpreted as a sexual advance. When Zillman jumped and moved away from Sanez, he asked, "Don't you like it when I touch you? Why did you jump when I touched you? Don't you like it?"

---

[1] All statutory references are to the Penal Code unless otherwise specified.

Zillman looked into the living room to check on X.B. and saw Sanez touching X.B.'s arm by moving his hand from her right shoulder down to her right hand. Wanting Sanez to know she was watching him, Zillman asked him if he was waiting for the bathroom, which he replied he was. Zillman subsequently left the house around 8:30 a.m. and returned at 9:45 a.m. X.B. was sleeping in the same position when Zillman returned.

Around 10:15 a.m., Concepcion Diaz walked upstairs to the second floor to use the restroom. Diaz saw a man wearing a purple shirt and a light-colored cap lift X.B.'s dress, pull down her underwear, and insert his fingers into her vagina. Diaz assumed the man was X.B.'s husband and went into the bathroom. Approximately 10 minutes later, Diaz walked out of the bathroom and saw the man hunched over X.B. having sexual intercourse with her. When Diaz approached the couch, the man attempted to close his pants, but struggled because his penis was erect. The man wiped his hands on a nearby blanket, walked away from the couch, and outside to the balcony. Diaz pulled up X.B.'s underwear, pulled down her dress, and covered her with the blanket. When Diaz shook her fingers at the man and told him, "No more," he went downstairs. Diaz subsequently told her daughter, Maribel Mayers, and X.B.'s friend, Gomez, that she saw a man having sex with X.B., and identified Sanez to Mayers.

Shortly thereafter, Zillman walked upstairs and noticed X.B. lying in a fetal position with her buttocks hanging off the sofa. In addition, she observed X.B.'s dress was hanging off her shoulders and "she had something draped over her waist." Zillman found this strange because "she'[d] been asleep for hours in the same position" and now

3

she was "partially disrobed" and lying in a different position than she had originally been in.

The next day, Gomez informed X.B. that Sanez raped X.B. while she was asleep, and suggested she take precautions. The following day, X.B. went to a health clinic for a sexual assault examination. The examination revealed X.B. had a laceration, known as a mounting injury, near the opening of her vagina--an injury that commonly occurs during nonconsensual sex.

An information charged Sanez with three counts: (1) rape of an unconscious person (§ 261, subd. (a)(4)); (2) rape by foreign object of an unconscious person (§ 289, subd. (d)); and (3) misdemeanor sexual battery (§ 243.4, subd. (e)(1)).

On October 30, 2012, a jury found Sanez guilty on all three counts. His motion for a new trial was denied. The court sentenced Sanez to a total term of six years: the middle term of six years on count 1; the middle term of six years on count 2 to run concurrent to count 1; and six months to run concurrent on count 3. Sanez filed a timely notice of appeal.

DISCUSSION

A. *Standard of Review*

The trial court has broad discretion to determine the admissibility of evidence. We review the trial court's decisions on the admissibility of evidence under the abuse of discretion standard. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197 ["[o]n appeal, a trial court's decision to admit or not admit evidence . . . is reviewed only for abuse of discretion"]; *People v. Rowland* (1992) 4 Cal.4th 238, 264 ["abuse of discretion . . . test is

4

proper when . . . the determination under attack concerns the admissibility of evidence"].)

A trial court's ruling will not be overturned "unless [it] exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113.)

B. *Inadmissible Hearsay*

Sanez contends the court abused its discretion in allowing X.B. to testify about Gomez's statement to her that she had been raped by Sanez. He contends the statement was irrelevant for any nonhearsay purpose, and thus was inadmissible.

At trial, X.B. testified she received a telephone call the day after the party from Gomez, stating she wanted to meet X.B. in person and talk to her alone about an incident at the party. X.B. testified Gomez told her Sanez raped her while she was asleep, and she should be cautious. Although defense counsel objected to the testimony on the basis of hearsay, defense counsel did not object on relevancy grounds.[2]

Out-of-court statements offered to prove the truth of the matter asserted are hearsay and are inadmissible unless they fall within an exception to the bar on hearsay evidence. (Evid. Code, § 1200, subds. (a) & (b).) However, an out-of-court statement need not be excluded as hearsay if it is offered for a purpose other than to prove the truth of the matter asserted. (*People v. Jablonski* (2006) 37 Cal.4th 774, 820-821.) For example, evidence of an out-of-court statement that explains the reaction of the listener

---

2      The People contend Sanez forfeited his relevancy argument on appeal because he did not object to the testimony specifically on relevancy grounds. Because we reach the merits of Sanez's contention, we do not address the People's claim.

5

may be properly admitted. (*People v. Turner* (1994) 8 Cal.4th 137, 189-190, overruled on other grounds in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5; *People v. Scalzi* (1981) 126 Cal.App.3d 901, 906-907.) Evidence of a person's then-existing state of mind is admissible as an exception to the hearsay rule when that evidence is relevant to prove or disprove a material fact in the case. (Evid. Code, § 1250; *People v. Rowland*, *supra,* 4 Cal.4th at p. 262.)

We reject Sanez's contention that the evidence of Gomez's statement to X.B. was inadmissible hearsay. Here, the testimony was not offered to prove the truth of any facts stated in the message--that Sanez raped X.B. while she was unconscious--but rather to explain how she learned she was raped and her subsequent conduct of going to the health clinic for a sexual assault examination.

Moreover, the testimony was relevant because it went to X.B.'s state of consciousness, a "disputed fact . . . of consequence to the determination of the action" (Evid. Code, § 210), and essential to proving the prosecution's charge that Sanez raped X.B. while she was unconscious. At trial, the parties did not stipulate X.B. was unconscious at the time she was raped. While Zillman testified she saw X.B. lying in the fetal position when she returned from the store--a position different from X.B.'s initial position--defense counsel argued X.B. actually changed her body position herself.[3]

---

3    In his closing arguments, defense counsel argued X.B. was not unconscious at the party: "I submit to you that Ms. [X.B.] was not that intoxicated. She said she was tired. She said that the drinks gave her energy, that she had been dancing all night. She had to walk upstairs again through the people sleeping on the floor and [lie] down again. That

Whether or not X.B. was unconscious was essential to explain how she learned about the rape and her subsequent behavior in response to that information. (See *People v. Ervine* (2009) 47 Cal.4th 745, 777 (*Ervine*) [finding no abuse of discretion in admitting officer's testimony about out-of-court statement because not offered for its truth, but rather to explain officers' actions following receipt of the information].) Further, like the court in *Ervine,*[4] the judge provided limiting instructions to the jury and explained they were to consider the testimony only for the purpose of explaining what behavior X.B. engaged in following receipt of that information.[5]

---

explains why, when Ms. Zillman came back, [she] saw her in a fetal position. She's changed herself."

[4] In *Ervine*, the trial court instructed the jury on the limited purpose of considering the admitted hearsay testimony: " 'Your first lesson, in the hearsay rule, ladies and gentlemen, which I am sure you have heard of before. [¶] It simply means that, what someone testifies as to what another told him, is usually hearsay evidence, right, because we can't cross-examine that other person. We don't know whether it's true. [¶] But it comes in not for whether or not what the person said is true, it comes to explain what the person who heard it did, okay. [¶] So he's going to explain what he did in response to what this person told him; but you do not--and so you receive it for that purpose only, to explain what the officer may have done in response to this information, but you don't take it as being for the truth of the matter stated by the person on the phone, okay. [¶] And now this would be double hearsay. The dispatcher doesn't know what happened. She heard it from somebody else, right. [¶] So you just have to keep in mind when you listen to this kind of testimony, that when it's hearsay testimony like that, it's not being offered to prove that those things are true.' " (*Ervine*, *supra*, 47 Cal.4th at pp. 774-775.)

[5] Before admitting X.B.'s testimony about Gomez's statement to her, the judge issued the following jury instructions: "Ladies and gentlemen . . . I'm going to let the witness testify about a statement that she received. This is normally hearsay, but you'll be allowed to consider it only for the purpose of explaining what behavior she engaged in following receipt of that information." The jury is presumed to have "faithfully followed the court's limiting instruction[s]." (*Ervine*, *supra*, 47 Cal.4th at p. 776.)

X.B.'s testimony was properly admitted for the nonhearsay purpose to explain the effect the hearsay had on X.B. rather than to prove the truth of the matter asserted. In addition, it was relevant to prove the prosecution's charge that X.B. was unconscious during the rape. (See Evid. Code, § 210.) Therefore, the court did not abuse its discretion in admitting X.B.'s hearsay testimony.

C. *Prejudicial Error*

Sanez contends the court prejudicially erred when it admitted X.B.'s hearsay testimony. He contends the error was not harmless because the original declarant, the eyewitness Diaz, is not credible and tends to fabricate sexual assault stories.[6] In addition, he contends the jury did not consider X.B.'s testimony for the limited purpose to show its effect on the listener, but rather accepted her testimony identifying Sanez as her rapist as true because it confirmed Diaz's testimony about seeing Sanez rape X.B.

Even if the court erred in admitting X.B.'s testimony, we conclude the error was not prejudicial. Given the substantial corroborative evidence to support Sanez's convictions, it is not reasonably probable a more favorable verdict would have resulted had the testimony been excluded. (See *People v. Watson* (1956) 46 Cal.2d 818, 836-837 [reversal required only if it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred].)

---

6     Because it is strictly within the " 'province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends,' " we do not address Sanez's contention. (*People v. Thornton* (1974) 11 Cal.3d 738, 754 [quoting *People v. Huston* (1943) 21 Cal.2d 690, 693], disapproved on other grounds in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12.)

At trial, Diaz provided eyewitness testimony that Sanez raped an unconscious X.B. (See *People v. Young* (2005) 34 Cal.4th 1149, 1181 [noting the uncorroborated testimony "of a single witness is sufficient to support a conviction"], citing *People v. Allen* (1985) 165 Cal.App.3d 616, 623.) Diaz testified she identified Sanez at the party to Mayers as the man who raped X.B. and she identified him again at trial. She testified about what Sanez was wearing when she saw him sexually assault X.B.--a purple shirt and a light-colored cap--corroborated by a photograph taken at the party depicting Sanez wearing a purple shirt and light-colored cap. In addition, Diaz specifically testified she saw Sanez first digitally penetrate X.B. with his fingers before proceeding to rape her while she was unconscious.

Zillman also provided corroborative testimony of Sanez's guilt at trial. She testified Sanez made sexual advances toward her when he pinched her buttocks, caressed her arm and, when she jumped away, asked her, "Don't you like it when I touch you?" Further, she testified to watching Sanez sexually touch X.B. while she slept by running his hand from X.B.'s shoulder down to her hand while moaning in a sexual manner. Like Diaz, Zillman also testified X.B.'s "buttocks were on the edge of the sofa," her dress was off her shoulder, and her legs were exposed.

Lastly, the nurse who examined X.B. at the health clinic testified X.B.'s sexual assault examination revealed a laceration near the opening of her vagina called a

"mounting injury," consistent with nonconsensual sexual activity.[7]  The nurse's testimony provided evidence X.B. was not anticipating sexual activity when she received the injury, which corroborates Diaz's testimony that X.B. was raped while she was unconscious.

Considering the strong direct and circumstantial evidence against Sanez and the court's limiting instruction to the jury to only consider X.B.'s testimony of Gomez's statement to her for a limited purpose, we conclude it is not likely Sanez would have received a better result had the testimony been excluded, and thus any error in admitting X.B.'s hearsay testimony was harmless.  (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

However, Sanez contends the court should apply the more stringent test of *Chapman v. California* (1967) 386 U.S. 18, 24, which requires reversal unless we conclude *beyond a reasonable doubt* the error was harmless, because X.B.'s testimony was unreliable hearsay precluded by the due process clause.  (See *Chapman*, at p. 24.) The out-of-court statement was properly admitted for the limited purpose to explain X.B.'s subsequent behavior and to explain how she learned about the rape.  (See *People v. Turner*, *supra*, 8 Cal.4th at pp. 189-190.)

In any event, even were we to apply the *Chapman* standard of prejudice, we would still conclude the court's alleged error in admitting X.B.'s hearsay testimony was harmless

---

7      At trial, the nurse, Patricia Secor, testified that a woman's body self-lubricates when she is anticipating sexual activity.  She testified that when a woman is not anticipating sexual activity and "the penis passes first in its hardened state" into the vaginal opening, mounting injuries may occur.

beyond a reasonable doubt.  As previously noted, the record provides substantial direct and corroborative evidence to support Sanez's conviction.

## DISPOSITION

The judgment is affirmed.


McDONALD, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.