Filed 3/25/26  P. v. Hughes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CLYDE DEWAYNE HUGHES,<br><br>Defendant and Appellant. | C102257<br><br>(Super. Ct. No. 23FE016011) |

Defendant Clyde Dewayne Hughes ignited a fire in Sacramento that burned 50-square-feet of vegetation.  A jury found him guilty of arson and possession of drug paraphernalia.  The trial court sentenced him to four years in state prison for arson, doubled to eight years for a prior strike conviction, and a 180-day term in county jail for possession of drug paraphernalia.

On appeal, defendant argues (1) the trial court erred in admitting hearsay statements made by a 911 caller, (2) his trial counsel was ineffective for failing to move to exclude his statements to a fire investigator, (3) the trial court erred in failing to instruct the jury on unlawfully causing a fire as a lesser included offense of arson, and (4) the trial court erred in denying, as untimely, his request for mental health diversion.

We agree only with defendant's argument concerning mental health diversion. We will conditionally reverse the matter and remand it to the trial court with directions to consider defendant's application for mental health diversion.

BACKGROUND

An amended felony complaint deemed an information charged defendant with arson (Pen. Code,[1] § 451, subd. (c); count one) and possession of drug paraphernalia (Health & Saf. Code, § 11364; count two). The information further alleged defendant had a prior strike conviction, rendering him subject to the sentencing provisions of sections 667, subdivisions (b)-(i), and 1170.12.

*Trial—The Prosecution Case*

On October 5, 2023, at approximately 7:18 p.m., Sacramento Police Officer Riley Start was dispatched to an area of Alhambra Boulevard near California State Route 99 based on a call reporting an arson. To Officer Start, arson meant "someone intentionally starting a fire." A witness had reported seeing an adult white male wearing a white t-shirt and carrying something like a trash bag leaving the area. Less than half a mile from the location of the fire, Officer Start located defendant, an adult white male wearing a white shirt and towing a white laundry hamper. Defendant was the only person in the area who matched the description of the person seen leaving the area of the fire. Officer Start searched defendant and found a glass methamphetamine pipe in his pocket. Defendant also had a lighter in his hand. Officer Start testified that defendant's behavior was consistent, at least to a degree, with someone experiencing mental illness or under the influence of drugs.

Sacramento Fire Department Fire Investigator Geoffrey Pease testified as an expert in arson and the causes and origins of fires. He was dispatched to the location of

---

[1]     Further undesignated section references are to the Penal Code.

the fire. "There was a grass fire at that location. And the caller to the fire department stated that they saw a white, male adult light the fire and walk away from the fire."

The fire occurred in a grassy hillside area enclosed by a chain link fence. According to fire investigator Pease, "this grass on this hill, it's dry grass," and it "burns really rapidly." By the time Pease arrived, the fire had been extinguished by an engine company. There was an area, approximately 50 square feet, of charred grass.

Before questioning defendant, fire investigator Pease advised him of his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).) Defendant indicated he understood his rights and agreed to speak with Pease. Defendant told Pease that he had lit the grass on fire with his lighter. Pease concluded that the fire was an incendiary fire, and that defendant set the fire.

*Trial—The Defense Case*

Defendant testified that he was homeless and that he lived in the area where the fire occurred. On the day of the fire, in cleaning the area, he intended to burn a pile of trash. He made a trash pile two or three feet high on top of a stump. The pile was not contained within a trash can, burn barrel, or fire pit. He set the trash pile on fire with his lighter. The fire grew out of his control. The fire "broke free and got to the grass on the other side." He attempted to extinguish the fire with water from a small plastic swimming pool, but someone had dumped the water out of the pool. He also tried unsuccessfully to extinguish the fire with soda from a two-liter soda bottle. Defendant had a methamphetamine pipe in his pocket and wanted to avoid police contact, so he decided to leave the area. Defendant threw all his clothes into a wheeled laundry hamper and left. As he was leaving, he saw a woman and told her to call the fire department.

*Trial—The Prosecution's Rebuttal Case*

The prosecution played a body camera video of Officer Start's encounter with defendant. Defendant told Officer Start that he did not start any fire. Officer Start asked defendant, "What's with the charcoal on you?" and defendant first responded that it was

3

not charcoal, but then stated, "That place has got charcoal all of it (inaudible)[.] But somebody set fire on the four of July." He then said that a woman had set the fire when she left. Officer Start testified that defendant's behavior, specifically rambling, making odd statements, twitching, and moving a lot, was consistent with the use of controlled substances. However, he did not know whether defendant was on methamphetamine that day, and he did not know whether defendant was experiencing mental health issues.

Fire investigator Pease recorded his interview with defendant on an audio recorder, and that audio recording was played at trial. In the recording, defendant told Pease that he "started the fire because they're crawling in and out of foxholes . . . ." He confirmed that he started the fire, and then said, "they trying to kill me over here." Defendant said, "The fourth of July, there was a guy that come out of a foxhole . . . ." When defendant again veered into discussion of something that happened on the fourth of July, Pease responded, "I'm not talking about the fourth of July, I'm talking about tonight," and directed defendant's attention to "that fire right there." Defendant said, "Yes," Pease asked, "[t]hat happened again tonight," and defendant replied, "Yes." Pease asked, "[s]o you lit that fire tonight and you've lit a fire before like that?" and defendant responded, "[o]n the four of July." Defendant indicated he told a woman to call the fire department. Defendant agreed that he used the lighter he was carrying to light the fire. Pease clarified, "[y]ou lit the grass on fire?" and defendant responded that he did.

Defendant never told fire investigator Pease that he had been lighting trash on fire. Pease did not see a trash-burning pile at the site. Pease did not see any indicators that a trash pile had been burned. Material in the area was scattered around, not concentrated in one area. Pease frequently encountered unhoused people in Sacramento who would tell him that they want to clean an area by burning trash despite a city ordinance prohibiting the practice. Pease would either cite them or tell them that doing so is illegal and they must stop.

4

*Verdicts and Sentencing*

The jury found defendant guilty on both counts. In a bench trial, the trial court found that defendant had a prior strike conviction. The trial court sentenced defendant to the middle term of four years on count one, doubled to eight years for his prior strike conviction, plus 180 days consecutive in county jail on count two.

DISCUSSION

I

*911 Caller's Statements*

A. *Additional Background*

Defendant argues that "the trial court erred in allowing evidence of hearsay statements in the 911 call." (Capitalization and bold typeface omitted.)

In his motions in limine, defendant objected on hearsay grounds "to any reference that a witness saw [defendant] set the fire unless the witness testifies." (Capitalization and bold typeface omitted.) In the colloquy on in limine motions, the trial court asked about potential hearsay the prosecutor intended to introduce. The prosecutor responded, "[y]es, in the sense that a witness called–and this is just solely for effect on the listener." The prosecutor continued: "why the police contacted the Defendant of all others if there's anyone else at the scene. So a witness calls in, says there's a grass fire, gives a description of the person that they believe started the fire and was walking away, and what that person was carrying. And then officers arrive on scene a couple moments later and contact the Defendant."

The trial court stated that it would be admissible and not hearsay. The court confirmed that there was no one who called and said, "Mr. Hughes did this, right?" and the prosecutor agreed. The court stated: "That would be objectionable. So as far as the nature of the call and what the caller saw, I think that's admissible for its effect on the listener."

Defense counsel responded: "Well, I just have issue with somebody saying, I saw [defendant] light the fire . . . , by description, saying . . . . I saw this person light the fire without that person testifying. I understand that there is an effect on the officer, but I think law enforcement arrived to the scene because there was a fire, right? So I don't think that that really has much probative value. [¶] However, on the [Evidence Code section] 352 balance, we have somebody pretty much saying he committed a crime without testifying . . . ."

The prosecutor replied: "the issue is that the officers–especially since in voir dire we talked about homelessness . . . , we don't want the officers [*sic*] to think that they chose the Defendant of all people because of the way he looked when he arrived on scene. [¶] And I will say as far as [Evidence Code section] 352 balance, the Defendant makes an admission to starting the fire. So the fact that this other evidence comes in for just effect on the listener, not actually the truth of the matter, and to show the officers' subsequent actions, doesn't substantially outweigh any probative value."

The trial court agreed to the admission of this testimony.

B.    *Forfeiture*

The People contend that defendant forfeited his argument. A " ' "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.' " (*People v. Partida* (2005) 37 Cal.4th 428, 433.) The People specifically assert that defendant, in the trial court, objected to the 911 caller's "statement that they saw someone, who by description matched appellant, *start the fire*," whereas, on appeal, he is arguing that the 911 caller reported seeing a subject with a description matching defendant's "*leaving the area* of the fire."

We think the People's argument parses the issue too finely. Defense counsel in the trial court asserted, among other things, that he took "issue with somebody saying, I saw [defendant] light the fire . . . , *by description*, saying . . . . I saw this person light the fire without that person testifying." (Italics added.) This plainly encompassed both the

6

911 caller's statement that someone set a fire, and the caller's description of the individual. We do not agree that defendant forfeited his argument that the trial court erred in admitting the 911 caller's hearsay statements by failing to include in his argument in the trial court that the 911 caller *also* reported that the person walked away from the fire. Moreover, defendant's argument on appeal is not limited to the caller's statement that a person walked away from the fire. Viewed in context, defendant's objection in the trial court and the issue he raises on appeal are sufficiently similar for us to conclude that he has not forfeited the argument as a general matter.

    C.    *Admissibility for Nonhearsay Purpose*

Only relevant evidence is admissible at trial. (Evid. Code, § 350.) " 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "Except as provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subd. (b).)

An appellate court reviews the trial court's admission of evidence under the abuse of discretion standard. (*People v. Helzer* (2024) 15 Cal.5th 622, 667.)

The 911 caller's statements were statements made other than by a witness at trial. (Evid. Code, § 1200, subd. (a).) Defendant argues that there was no relevant nonhearsay purpose to this evidence.

"Evidence of an out-of-court statement may be admitted for the nonhearsay purpose of showing its effect on the listener so long as that effect is relevant to an issue in dispute." (*People v. Ramirez* (2022) 13 Cal.5th 997, 1115.) A statement that is offered to prove the effect on the listener is nonhearsay because " 'it is the hearer's reaction to the statement that is the relevant fact sought to be proved, not the truth of the matter

asserted in the statement.' " (*People v. Scalzi* (1981) 126 Cal.App.3d 901, 907.) "However, '[a] hearsay objection to an out-of-court statement may not be overruled simply by identifying a nonhearsay purpose for admitting the statement. The trial court must also find that the nonhearsay purpose is relevant to an issue in dispute.' " (*People v. Jablonski* (2006) 37 Cal.4th 774, 820-821.)

The People argue that the statements made by the 911 caller were relevant to the nonhearsay purpose of showing why officers detained defendant. Defendant's position is that why the officers contacted him was not relevant to any disputed issue at trial. We reject defendant's contention for two reasons.

First, defendant argued in the trial court that the statements were hearsay. The court stated, "I think that's admissible for its effect on the listener." Defense counsel responded: "I understand that there is an effect on the officer, but I think law enforcement arrived to the scene because there was a fire, right? So I don't think that that really has much probative value. [¶] However, on the [Evidence Code section] 352 balance, we have somebody pretty much saying he committed a crime without testifying . . . ." The prosecutor reiterated the evidence was relevant for its effect on the listener. Defendant did not object.

Thus, defendant argued that the 911 caller's statements were hearsay, had limited probative value, and were unduly prejudicial for purposes of an Evidence Code section 352 balancing analysis. Not only did defendant not argue that the evidence was inadmissible for the nonhearsay purpose of the effect on the listener because it did not tend to prove a matter in dispute, but he also stated that he understood that there was an effect on the listener. Thus, defendant raises this particular argument for the first time on appeal. (See *People v. Partida, supra*, 37 Cal.4th at p. 433.)

Second, we conclude that the evidence was relevant to an issue in dispute. The 911 caller's statements were relevant to the effect on the listener, Officer Start. Having been provided with a report of arson and a description of a suspect, Officer Start reported

8

to the area, searched for the suspect, and contacted and detained defendant who subsequently made statements admitting to setting the fire.

Arguing that why officers contacted him was not relevant to the issue in dispute, defendant relies on *People v. Scalzi, supra*, 126 Cal.App.3d 901. In that case, the defendant, named John, was visiting friends when police executed a warrant on the friends and their house. (*Id*. at p. 903.) There was incriminating evidence on the table where the defendant and others were sitting, including a scale with white powder on it, a mirror with white powder on it, and a sack containing 26 bindles of white powder. (*Id*. at p. 904.) During the search, an officer answered a succession of telephone calls received at the house. (*Id*. at pp. 903, 905.) The trial court allowed the prosecution to present testimony about one of the calls over the defendant's hearsay objection. (*Id*. at p. 905.) The officer testified that the female caller asked for John. (*Ibid*.) The caller asked if John had "taken care of business," and the officer asked what she meant. (*Ibid*.) The caller asked if John "had gotten it bagged up." (*Ibid*.) The appellate court rejected the People's argument that the female caller's declarations were offered for the nonhearsay purpose of showing why the officer " 'booked [the defendant] on those particular charges, since [the defendant] was not told what he was being arrested for until after the telephone conversations took place.' " (*Id*. at p. 906.) One of the reasons the court rejected this argument was that the officer's "state of mind accounting for [the defendant's] arrest, booking and charges was not an issue in the case, therefore irrelevant as a matter of law." (*Ibid*.)

The circumstances here are not analogous to those in *Scalzi*. Officer Start's location, identification, and detention of a suspect in the arson were relevant to an issue in dispute, specifically the identity of the alleged arsonist. When a defendant pleads not guilty, as defendant did here, the defendant "places all issues in dispute, and thus the perpetrator's identity, intent and motive are all material facts." (*People v. Walker* (2006) 139 Cal.App.4th 782, 796.) Defendant did admit to setting a fire, both in his statement to

9

Officer Pease and in his trial testimony. However, in opening statements, defense counsel began: "Did he light the fire? That's not going to be the only question that you have to answer," although he continued to suggest that "it's not even going to be the ultimate issue in this case." In *Scalzi*, the court stated that the officer's "*reaction* or state of mind after the telephone conversation and any actions he took based thereon shed no light on any issues presented in the case." (*People v. Scalzi, supra*, 126 Cal.App.3d at p. 907.) Why the officer booked the defendant on particular charges was not a matter in dispute. (*Id*. at p. 906.) Here, conversely, the identity of the perpetrator, and Officer Start's search for, identification, and detention of a suspect based on the 911 caller's description, was.

We recognize that the challenged evidence contained two levels of hearsay. The 911 caller's statements, the first level, were relayed to Officer Start, the second. "Multiple hearsay may not be admitted unless there is an exception [or relevant nonhearsay purpose] for each level." (*People v. Sanchez* (2016) 63 Cal.4th 665, 675.) The analysis is essentially the same for both levels. Testimony concerning the 911 caller's statements, and the repetition of these statements to Officer Start, were nonhearsay, since they were not offered for the truth of the matter asserted but rather to explain, first, the repetition of those statements to Officer Start and, second, the effect on Officer Start and the action he took.

D.    *Evidence Code Section 352*

Defendant argues that, even if there was a nonhearsay purpose to the evidence, it should have been excluded under Evidence Code section 352. We disagree.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

10

Here, the probative value of the evidence was to demonstrate that law enforcement received a description of the alleged arsonist, Officer Start located defendant, who matched that description, near the location of the fire, and he detained defendant.

As to prejudicial effect, defendant argues there was a danger the jury would use the statement in a hearsay manner, believing "that a caller had contemporaneously called 911 and reported that [defendant] started the fire and left the scene." We disagree that there was a substantial danger of undue prejudice in the form of the jury using the statements for their truth. Defendant admitted to setting the fire and leaving the scene, drastically diminishing any unduly prejudicial effect of the testimony.

Defendant argues that the 911 caller's statements "would cause the jury not to believe that appellant accidentally started the fire." The 911 caller reported an arson, and, to Officer Start, that meant someone intentionally starting a fire. However, defendant offered a defense that, while he may have intentionally started a trash fire, it got out of control and resulted in the grass fire. The 911 caller's statements do not undermine this defense. At most, they gave rise to a factual dispute for the jury to resolve, which would be essentially the same factual dispute the jurors would have to resolve in the face of defendant's testimony as contrasted with that of fire investigator Pease.

Defendant also argues the jury might use the statements as evidence of his consciousness of guilt. However, insofar as defendant was located some short distance from the fire, the jury could infer that he left the area after the fire started regardless of the 911 caller's statements. Whether he did so due to consciousness of guilt, to avoid law enforcement finding his methamphetamine pipe, or for some other reason, again, presented an issue for the jury to resolve. Defendant has not shown a substantial danger that the 911 caller's statements were unduly prejudicial in this regard.

Defendant also argues the statements precluded a defense that his statements to fire investigator Pease were unreliable because of his mental illness or drug use, they

11

would preclude an argument that his statements were ambiguous as to whether he set the fire in this case or a fire on July 4, and that, absent the statements, he may have chosen not to testify. However, defendant has failed to adequately explain these theories of undue prejudice. (See generally *County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 [" 'We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory' "].)

While the probative value of the 911 caller's statements was limited, we conclude that it was not substantially outweighed by the probability that their admission would create a substantial danger of undue prejudice. (See Evid. Code, § 352.)

II

*Ineffective Assistance of Counsel*

A.    *Additional Background*

Defendant argues his trial counsel was ineffective for failing to seek to exclude his statements to fire investigator Pease on *Miranda* grounds.

While defendant was in the back of a patrol vehicle, the following exchange took place between defendant and fire investigator Pease:

"[Fire investigator Pease]:  So umm because you are in the back of this police car, I wanna make sure you understand your rights because you have rights okay?

"[Fire investigator Pease]:  You have the right to remain silent, you understand that?

"[Defendant]:  Yes sir

"[Fire investigator Pease]:  Anything you say can and will be used against you in the court of law, you understand?

"[Defendant]:  Yes

"[Fire investigator Pease]:  Okay

"[Fire investigator Pease]:  You have the right to talk to a lawyer and have him or [*sic*] present with you . . .

12

"[Defendant]:  I thought you were my public defender

"[Fire investigator Pease]:  No, I'm with the fire department

"[Defendant]:  Oh you look like[]

"[Fire investigator Pease]:  You have the right to have uhh talk to a lawyer before being questioned.  You understand that?

"[Defendant]:  Yes

"[Fire investigator Pease]:  Okay.  If you cannot afford to hire a lawyer, one would be appointed to you by the court

"[Defendant]:  I understand

"[Fire investigator Pease]:  Okay, so you understand your rights.

"[Fire investigator Pease]:  I want to talk to you and find out what's going on tonight.  Do you want to talk to me?

"[Defendant]:  Yes Sir

"[Fire investigator Pease]:  Okay, that's very cooperative of you.  So can you tell me what happened tonight?"  Defendant then made statements to Pease about what had happened.

B.     *Ineffective Assistance of Counsel Standards*

To prevail on a claim of ineffective assistance of counsel, a defendant bears the burden of showing (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant.  (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)  Failure to make a futile or meritless objection is not deficient performance.  (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1092.)

C.     *Miranda and Waiver*

" ' "As a prophylactic safeguard to protect a suspect's Fifth Amendment privilege against self-incrimination, the United States Supreme Court, in *Miranda*, required law

13

enforcement agencies to advise a suspect, before any custodial law enforcement questioning, that 'he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' " ' " (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1085-1086.) "The high court has 'never insisted that *Miranda* warnings be given in the exact form described in that decision.' [Citation.] Rather, '[t]he inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda*." ' " (*People v. Suarez* (2020) 10 Cal.5th 116, 159 (*Suarez*).)

"Under *Miranda*, custody is a term of art meant to designate circumstances 'that are thought generally to present a serious danger of coercion.' [Citation.] Because a *Miranda* warning is only required once custodial interrogation begins, the defendant must necessarily have been in custody in order to assert a *Miranda* violation." (*People v. Torres* (2018) 25 Cal.App.5th 162, 172.) The People agree with defendant that he was in custody when fire investigator Pease questioned him. Considering the totality of the circumstances (see generally *id*. at pp. 172-173), we accept that concession.

" ' " '[I]f the accused indicates in any manner that he wishes to remain silent or to consult an attorney, interrogation must cease, and any statement obtained from him during interrogation thereafter may not be admitted against him at his trial' [citation], *at least during the prosecution's case-in-chief* [citations]." [Citation.] "Critically, however, a suspect can waive these rights." [Citation.]' [Citation.] 'The waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" [citation], and knowing in the sense that it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." ' " (*People v. McCurdy, supra*, 59 Cal.4th at p. 1086.) An appellate court independently reviews whether a defendant's " '*Miranda*

14

waivers were knowingly, intelligently, and voluntarily made . . . .' " (*Suarez*, *supra*, 10 Cal.5th at p. 158.)

D. *Analysis*

Defendant argues that he did not validly waive his *Miranda* rights. He argues that there was no express waiver, and that his actions did not otherwise make clear he intended to waive his rights. We conclude that, even if defendant did not expressly waive his *Miranda* rights, he impliedly waived them. Therefore, defendant has failed to establish that a suppression motion would have been potentially meritorious, counsel's performance was deficient for failure to move to suppress his statements, and defendant suffered prejudice as a result.

The exchange between fire investigator Pease and defendant quoted above demonstrates that Pease informed defendant that he had the right to remain silent, and defendant indicated that he understood. Fire investigator Pease informed defendant that "[a]nything you say can and will be used against you in the court of law," and defendant indicated that he understood. Pease informed defendant that he had "the right to talk to a lawyer and have him or [*sic*] present with you." At this point, defendant said he thought Pease was his public defender. Fire investigator Pease immediately corrected defendant, informing him he was from the fire department, and then reiterated that defendant had "the right to have uhh talk to a lawyer before being questioned," and defendant indicated that he understood. Pease then informed defendant that if he could not "afford to hire a lawyer, one would be appointed to you by the court," and defendant indicated that he understood. We conclude Pease reasonably conveyed to defendant his rights as required by *Miranda*. (See *Suarez, supra*, 10 Cal.5th at p. 159.)

"A valid waiver need not be express, but 'may be implied from the defendant's words and actions.' [Citation.] When a suspect ' "having heard and understood a full explanation of his or her *Miranda* rights, then makes an uncompelled and uncoerced

15

decision to talk, he or she has thereby knowingly, voluntarily, and intelligently waived them." ' " (*People v. Krebs* (2019) 8 Cal.5th 265, 302.)

After confirming defendant understood each of his rights, fire investigator Pease stated, "I want to talk to you and find out what's going on tonight. Do you want to talk to me?" Defendant responded, "Yes Sir," and Pease then asked defendant if he could "tell me what happened tonight?" Defendant then made statements to Pease. Even if defendant did not expressly waive his *Miranda* rights, we conclude that he impliedly did so. Defendant " ' "having heard and understood a full explanation of his . . . *Miranda* rights," ' " made an " ' "uncompelled and uncoerced decision to talk," ' " and he " ' "thereby knowingly, voluntarily, and intelligently waived" ' " his *Miranda* rights. (*People v. Krebs, supra*, 8 Cal.5th at p. 302.)

Defendant emphasizes that fire investigator Pease did not identify himself as a law enforcement officer. He does not cite any authority for the proposition that Pease was required to do so to render the advisements and defendant's implied waiver effective. (See *County of Sacramento v. Singh, supra*, 65 Cal.App.5th at p. 861 [we may disregard legal arguments not supported by citations to authority or that are conclusory].) In any event, defendant had been apprehended by police officers. He was being held in the back of a patrol vehicle when fire investigator Pease questioned him. At the beginning of the conversation, Pease stated, "because you are in the back of this police car, I wanna make sure you understand your rights because you have rights okay?" Defendant necessarily agrees that he was in law enforcement custody at the time. When defendant said he mistakenly believed Pease was his public defender, Pease immediately corrected him. It was clear defendant was undergoing custodial interrogation. That Pease did not invoke the term "law enforcement officer" does not establish that the advisements or defendant's waiver were ineffective. Nor are we aware of any authority for defendant's suggestion that, after correcting defendant that he was with the fire department and not defendant's public defender, Pease was required to repeat the advisements already given.

Defendant also argues that fire investigator Pease did not ask defendant if he was willing to waive his rights. However, we have concluded that, even if defendant did not expressly waive his *Miranda* rights, he impliedly did so.

Defendant also emphasizes that fire investigator Pease, at the preliminary hearing, indicated he thought defendant was experiencing mental health issues. However, the voluntariness of a defendant's statements to law enforcement " ' " 'does not turn on any one fact, no matter how apparently significant, but rather on the "totality of [the] circumstances." ' " . . . The determinative question " 'is whether defendant's choice to confess was not "essentially free" because his will was overborne.' " ' " (*Suarez, supra,* 10 Cal.5th at pp. 157-158.) Pease's impression that defendant might have been experiencing mental health issues alone does not establish that defendant did not impliedly waive his *Miranda* rights.

Lastly, in his reply brief, defendant distinguishes *People v. Ramirez, supra*, 13 Cal.5th 997, on which the People rely, by arguing, among other things, that, here, defendant was not given a "complete set[] of *Miranda* warnings" (*id*. at p. 1106), and specifically that defendant was not advised that he had a right to have an attorney present during questioning. Defendant later argues that he did not impliedly waive his *Miranda* rights because he was not given this particular advisement. However, we have concluded that fire investigator Pease's advisements " 'reasonably "conve[yed] to [defendant] his rights as required by *Miranda*." ' " (*Suarez, supra*, 10 Cal.5th at p. 159; see also *id*. at pp. 159-160 [the advisement touched all the bases required by *Miranda*; while "some of the words in the advisement form could have been more precise," the language was not so ambiguous or confusing as to fail to reasonably convey the defendant's rights].)

As stated, we conclude defendant impliedly waived his *Miranda* rights. Because defendant therefore has not satisfied his burden of establishing that a suppression motion would have been potentially meritorious, he has failed to demonstrate both that counsel's performance was deficient and prejudicial. (See *People v. Washington* (2017)

17

15 Cal.App.5th 19, 26 [the decision not to make a meritless request is neither deficient performance nor prejudicial]; *People v. Beasley, supra*, 105 Cal.App.4th at p. 1092 [failure to make a futile or meritless objection is not deficient performance].)

III

*Failure to Instruct on Lesser Included Offense*

Defendant argues that the trial court erred in failing to instruct on the lesser included offense of unlawfully causing a fire under section 452, subdivision (c). Defendant argues that the evidence was sufficient to find that he committed a violation of that section and not arson. We disagree.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] . . ." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154, disapproved on another ground in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) The trial court is required to instruct on a lesser included offense "whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." (*Breverman,* at p. 162.) " ' "Substantial evidence" in this context is " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[]' " that the lesser offense, but not the greater, was committed.' " (*People v. Romero* (2008) 44 Cal.4th 386, 403.) A trial court's failure to instruct on an allegedly lesser included offense is reviewed de novo. (*People v. Nieves* (2021) 11 Cal.5th 404, 463.)

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451.) " 'Willfully,' when applied to the intent

18

with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to.  It does not require any intent to violate law, to injure another, or to acquire any advantage." (§ 7, subd. (b)(1).)  " 'Willfully implies no evil intent; " 'it implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' " ' " (*People v. Atkins* (2001) 25 Cal.4th 76, 85 (*Atkins*).) "The use of the word 'willfully' in a penal statute usually defines a general criminal intent, absent other statutory language that requires 'an intent to do a further act or achieve a future consequence.' " (*Ibid*.)  In the chapter of the Penal Code addressing arson, the term " '[m]aliciously' " "imports a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e).)  "As with 'willfully,' the statutory definition of 'maliciously,' in the context of arson, requires no specific intent." (*Atkins,* at p. 85.) Malice in law "will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right." (*In re V.V.* (2011) 51 Cal.4th 1020, 1028.)  " ' "An intentional act creating *an obvious fire hazard* . . . done without justification . . . would certainly be malicious . . . ." ' " (*Ibid*.)

Arson does not require a "specific intent to burn a 'structure, forest land, or property,' but rather requires only an intent to do the act that causes the harm." (*Atkins, supra*, 25 Cal.4th at p. 86.)  The statute "requires only a general criminal intent and . . . the specific intent to set fire to or burn or cause to be burned the relevant structure or forest land is not an element of arson." (*Id*. at p. 84; accord, *In re V.V., supra*, 51 Cal.4th at p. 1027.)  The "description of the proscribed act fails to refer to an intent to do a further act or achieve a future consequence." (*Atkins,* at p. 86.)

Unlawfully causing a fire (§ 452) is a lesser included offense of arson (§ 451). (*Atkins, supra*, 25 Cal.4th at p. 88 ["The fact that reckless burning is a lesser offense of arson is also not dispositive"]; *People v. Hooper* (1986) 181 Cal.App.3d 1174, 1182 ["we conclude that unlawfully causing a fire is a lesser included offense of arson"],

19

disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 189, fn. 7.) "A person is guilty of unlawfully causing a fire when they recklessly set fire to, burn, or cause to be burned any structure, forest land, or property." (§ 452.) In the chapter of the Penal Code addressing arson, " '[r]ecklessly' " means, in pertinent part, that "a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." (§ 450, subd. (f); see CALCRIM No. 1530.)

"The critical distinction between arson, as defined in section 451, and unlawfully causing a fire, as defined in section 452, is the mental state with which the burning is carried out." (*People v. Hooper, supra*, 181 Cal.App.3d at p. 1181.) Arson's "willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire . . . ." (*Atkins, supra*, 25 Cal.4th at p. 88.) "Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*Id*. at p. 89.) "On the other hand, the offense of unlawfully causing a fire covers reckless accidents or unintentional fires, which, by definition, is committed by a person who is 'aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property.' [Citations.] For example, such reckless accidents or unintentional fires may include those caused by a person who recklessly lights a match near highly combustible materials." (*Ibid*.)

Here, there is not substantial evidence from which a jury could conclude that defendant committed unlawfully causing a fire (§ 452) but not arson (§ 451).

Defendant deliberately ignited the fire as a "deliberate and intentional act . . . ." (*Atkins, supra*, 25 Cal.4th at p. 88.) There was no evidence that he started the fire through a reckless accident or unintentional conduct analogous to "recklessly light[ing] a match near highly combustible materials." (*Id*. at p. 89.) The fact that the fire he started grew beyond his control does not render his intentional act in setting the fire unintentional. Defendant deliberately and intentionally set a fire, and he did so "under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*Atkins, supra*, 25 Cal.4th at p. 89.) Even if we were to accept defendant's version of the events, he admitted that he placed a two-or three-foot pile of trash on top of a stump. Then he set the trash on fire with his lighter. The trash pile was not confined, such as in a trash can, burn barrel, or fire pit. The fire occurred on a grassy hillside where the grass was dry and would burn very quickly. The fire grew out of defendant's control and "got to the grass on the other side." The fire burned a 50-square-foot area of grass. Based on these facts, we do not agree with defendant's position that there was substantial evidence that there was "a substantial and unjustifiable risk" that his act would set fire to a structure, forest land, or property (§ 450, subd. (f)), but not that he intentionally set the fire under "such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property" (*Atkins,* at p. 89).

Lastly, we do not agree with defendant's contention that fire investigator Pease's testimony that unhoused people sometimes tell him that they burn trash establishes that it was not a highly probable consequence that the grassy area would burn. That others engage in this practice does not mean that the burning of the grassy area was not highly probable. In fact, that the practice is prohibited, policed, and penalized suggests otherwise.

The trial court did not err by not instructing the jury on unlawfully starting a fire.

## IV

### *Mental Health Diversion*

Defendant argues that the trial court erred in denying his request for mental health diversion.  The People concede the point, and we agree.

Before jury selection, defense counsel indicated that defendant wanted to pursue mental health diversion, which he had sought previously before abandoning his efforts. The trial court stated that "we are on the eve of trial after both counsel have declared ready.  It's been assigned to this department for trial, and I believe that the request for mental health diversion, again, is untimely. . . .  [¶]  . . .  So I am going to move forward for trial."  Defense counsel again requested that the trial court consider defendant's application for mental health diversion, and the court again denied it as untimely.

"Section 1001.36 authorizes pretrial mental health diversion for defendants with qualifying mental health disorders."  (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.)  The trial court must find a defendant is both eligible and suitable for diversion. (§ 1001.36, subds. (b)-(c).)  We review a trial court's order denying mental health diversion for abuse of discretion and its factual findings for substantial evidence. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.)  "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citation], or bases its decision on express or implied factual findings that are not supported by substantial evidence."  (*Id*. at p. 449.)

In a jury trial, "to be timely, a request for diversion must be made before attachment of jeopardy . . . ."  (*People v. Braden* (2023) 14 Cal.5th 791, 819.)  "In a trial by jury, the defendant is deemed to have been placed in jeopardy when the jurors have been impaneled and sworn."  (*People v. Fields* (1996) 13 Cal.4th 289, 299.)

Here, the jury had not been impaneled or sworn when defendant requested mental health diversion.  We agree with defendant that the trial court abused its discretion in denying his unopposed request for mental health diversion solely on the ground that it

was untimely.  We will conditionally reverse the judgment and remand the matter to allow the trial court to consider defendant's request for mental health diversion.

DISPOSITION

The judgment is conditionally reversed, and the matter is remanded to the trial court to consider defendant's application for mental health diversion under section 1001.36.  If the trial court grants diversion and defendant successfully completes mental health diversion, the court shall dismiss the charges.  (*Id*., at subd. (h).)  If the court denies defendant's application for mental health diversion, or if defendant does not successfully complete diversion, then the court shall reinstate the judgment and sentence.


_____\s\_____
Krause, J.

We concur:


_____\s\_____
Renner, Acting P. J.


_____\s\_____
Wiseman, J.*

---

*        Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.